IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------X

The Estate of Larry Shaw, and Susan Shaw, as the
Executor of the Estate of Larry Shaw, asserting claims
on behalf of a New York corporation, Shaw Family
Archives, Ltd., on a shareholder derivative basis,
and/or, when so pleaded, asserting individual claims
for the benefit of the Estate of Larry Shaw,

COMPLAINT  No. 2)
(NY. No. 31831/14)

                              Plaintiffs,

7:14-cv-03849-NSR

     -against-

Edie Shaw Marcus aka Edith Shaw Marcus, Meta
Shaw Stevens, Melissa Stevens, David Marcus,
Gary Adelman, Esq., Robinson, Brog, Leinwand,
Greene, Genovese, & Gluck, P.C., Meister Seelig
& Fein, LLP, and Sam Shaw Inc.,

                         Defendants,

And Shaw Family Archives, Ltd.,

                As a Nominal Party to the Action.
---------------------------------------------------------------------------X

      The document attached hereto is a copy of the second of two complaints prepared to be

filed in the Supreme Court of the State of New York, Index No. 31831/ 2014, for which a

summons with notice was filed to commence the action on April 18, 2014 .  A second version of

this complaint, essentially identical to the attached pleading, was prepared to be filed in the

Supreme Court of the State of New York, Index No. 35621/13, commenced by the filing of a

summons with notice in that Court, on December 31,2013; it will also be filed in this action.

      Each of these complaints is the subject of a joint notice of removal, dated May 29, 2014,

to which copies of each of the referenced summons with notice were attached when it was filed.

These two pleadings should be deemed to be the complaint that is filed in this action.

Plaintiff objects to the removal of this (or these) action(s) on the grounds that this Court lacks subject matter jurisdiction. The statement made in support of the removal of this action, that the claims in this (these) action(s) arise under the Copyright Law, and are therefore subject to federal jurisdiction, is in error, as the claims herein do not allege copyright infringement. The plaintiffs reserve their right to apply by motion to the Court to remand each of these proceedings.

Dated:   June 23, 2014

JOSEPH N. ADAMS, ESQ. P.C.
Attorney for Plaintiffs
76 Burd Street, Nyack, New York 10960
(845) 353 2320; (845) 353 6934

TO:

Natalie Sulimani, Eq.
Sulimani Law Firm PC
116 West 23rd Street
New York, New York 10011

Robinson Brog Leinwand
Genovese & Gluck, P.C.
875 Third Avenue
New York, New York 10017

Lisa Shrewsberry, Esq.
Traub Lieberman Strauss & Shrewsberry, LLP
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10065

Sarah Matz, Esq.
Adelman Matz, P.C.
1173A Second Avenue, Suite 153
New York, New York, 10065

Melissa Stevens, pro se
c/o Shaw Family Archives, Ltd.
41 Union Square West, Suite 907
New York, New York 10011


David Marcus, Esq.
488 Madison Avenue, Suite 1120
New York, New York 10022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND          Index No     31831/2014
-----------------------------------------------------------------------------X

The Estate of Larry Shaw, and Susan Shaw, as the
Executor of the Estate of Larry Shaw, asserting claims
on behalf of a New York corporation, Shaw Family                COMPLAINT
Archives, Ltd., on a shareholder derivative basis,
And/or, when so pleaded, asserting individual claims
for the benefit of the Estate of Larry Shaw,

                         Plaintiffs,

     -against-

Edie Shaw Marcus aka Edith Shaw Marcus, Meta
Shaw Stevens, Melissa Stevens, David Marcus,
Gary Adelman, Esq., Robinson, Brog, Leinwand,
Greene, Genovese, & Gluck, P.C., Meister Seelig
& Fein, LLP, and Sam Shaw Inc.,

                         Defendants,

And Shaw Family Archives, Ltd.,

                As a Nominal Party to the Action.
-----------------------------------------------------------------------------X

        The Estate of Larry Shaw, and Susan Shaw, as executor of the Estate of Larry

Shaw, asserting claims on behalf of the Debtor, Shaw Family Archives, Ltd. ("SFA") on a

shareholder derivative basis for the benefit of SFA; or, when so pleaded, for the benefit of the

Estate of Larry Shaw, by its undersigned attorney, Joseph H. Adams, Esq, P.C., as and for its

complaint herein, respectfully alleges:


             PARTIES, VENUE & SUMMARY OF THE CAUSES OF ACTION

1.          The Estate of Larry Shaw ("Estate") represents the interests of Larry

Shaw, deceased, who owned 50% of SFA stock, and had been SFA's principle executive.

2.      Susan Shaw is the wife of Larry Shaw, and is the duly appointed executor

of the Estate of Larry Shaw, pursuant to order of Rockland County Surrogate's Court.

3.      SFA is a New York corporation, formed on or about June 19, 2002, to implement a

the settlement of a litigation originally commenced by Sam Shaw against his son Larry Shaw and

others, which was originally captioned, as Sam Shaw v. Martin Bressler, Larry Shaw, Susan Shaw,

Bressler & Bressler, Valerie Goodman, 1912 Productions Inc., and Marc Weinstein, individually

and d/b/a Color Group,   Index No. 123783/94 (New York County); after the death of Sam Shaw

in 1999, that caption was amended so that   Edith Shaw Marcus and Meta Shaw Stevens were

substituted in their claimed capacity as the "temporary administrators" of their father's estate to be

identified as plaintiffs as follows: "Edith Shaw Marcus and Meta Shaw Marcus, as temporary

Administrators of the Estate of Sam Shaw" (hereinafter the "Shaw family action").

4.      Edith Shaw Marcus is a New York citizen and the sister of Larry Shaw.

5.      Meta Shaw Stevens is a New York citizen and the sister of Larry Shaw.

6.      Melissa Stevens is a New York citizen and the daughter of Meta Stevens.

7.      David Marcus is a New York citizen and the son of Edie Shaw Marcus.

8.      Gary Adelman, Esq., ("Adelman") is a New York citizen, who, at times pertinent hereto,

was retained as legal counsel to represent SFA individually and through a number of law firms

with which Adelman was the associated as an attorney, including those named as defendants.

9.      Upon information and belief, Robinson, Brog, Leiwand, Greene, Genovese & Gluck, P.C.

("Robinson Brog") is a New York law firm, which has represented SFA through Adelman.

10.     Upon information and belief, Meister Seelig & Fein, LLP ("Meister Seelig") is a New

York law firm that has represented SFA at pertinent times, through Adelman and/or others.

2

11.     Sam Shaw Inc. is a New York corporation formed on or about December 18, 2007.

12.     The causes of action asserted in this action arise from the conduct of the defendants,

particularly Edie Shaw Marcus and Meta Shaw Stevens (when appropriate, the "Shaw sisters"),

acting in the purported role as the controlling two members of the Board of Directors, after the

death of Larry Shaw, in October, 2007 from in or about January 2008 until the present time.

13.     By certain causes of action pleaded in equity, the complaint seeks to restore to SFA the

rightful ownership of the copyrights to all of the photographs, including those of Sam Shaw in

what has become known as the Shaw Family Archive collection, after these SFA copyrights were

purportedly transferred by the Shaw sisters, nominally acting as the SFA Board of Directors ("SFA

Board" or "Board") to a legal entity which the Shaw sisters created in or about December, 2007,

for the explicit and unlawful purpose of implementing a fraudulent conveyance of those copyrights

to prevent them from being seized or garnished to satisfy the outstanding claims for legal fees

asserted jointly by each of the attorneys who had represented, respectively, the competing factions

or sides of the Shaw family in the original litigation dubbed herein the Shaw family action.

14.     These causes of action seek to rescind and/or to nullify any purported agreement or other

understanding that undertakes to be or to contain an acknowledgment or recognition by SFA, that

the copyrights to the photographs of Sam Shaw do not belong to SFA but to Sam Shaw Inc., a

company only formed after the death of Larry Shaw, that is owned by the Shaw sisters; they further

seek a mandatory injunction to require the Shaw sisters, and their jointly owned Sam Shaw Inc., to

take any and all actions necessary to assign or transfer any existing registered copyrights to the

photographs of Sam Shaw or Larry Shaw to SFA, and to insure future copyright registrations or

assignments for the photographs of Sam Shaw and Larry Shaw are maintained in SFA's name.

15.     Certain of the causes of action against the Shaw sisters, the members of their families and

3

their attorneys, are pleaded to recoup monetary damages from the self-interested management of the Shaw sisters,   while they acted nominally as a two-person majority of the SFA Board, after the death of their brother Larry Shaw, with particular emphasis on the self-interested actions of the Shaw sisters, in the way that they handled the resolution of the unpaid legal fee claims of the two attorneys that had represented, respectively, Larry Shaw and themselves and their father, and later their father's estate, when these claims were prosecuted as charging liens against SFA's assets.

16.     Upon information and belief, in an irresponsible and self-interested manner described more fully below, while nominally acting as the SFA Board, the Shaw sisters took action which refused to make payments then due to Jeffry Tunick, Esq. ("Tunick"), who represented Larry Shaw, to the detriment of SFA and the Estate of Larry Shaw, while directing their efforts and the revenues then being earned by SFA to the unsuccessful goal of totally defeating and extinguishing the disputed attorney fee claims of William Greenawalt, Esq, ("Greenawalt") who had been their attorney.

17.     Upon information and belief, the Shaw sisters continuing course of conduct, from the time that they unilaterally asserted the disputed right to act as the controlling members of the SFA Board, reflected an intentional plan to increase the attorney fee debt of the Estate of Larry Shaw, while making use of the revenues of SFA to attempt to eliminate their own legal fee debt owed to William Greenawalt, from his prior representation of the Shaw sisters, and the Sam Shaw estate.

18.     Upon information and belief, in their actions, the Shaw sisters intentionally sought to position themselves or SFA so as to enforce a potential indemnification claim against the Estate of Larry Shaw for these legal fees to enable them or SFA to seize the stock held by the Estate of Larry Shaw in SFA stock, in order to destroy its equity in SFA, and obtain exclusive ownership of SFA.

19.     The Shaw sisters caused damages to SFA, and potentially to the Estate of Larry Shaw, by their refusal and failure to permit the use of SFA revenues to pay down the portion of the debt for

4

legal fees due to Tunick who represented Larry Shaw in the Shaw family action, when those legal fees had been determined as to their amount, as an account stated, by final determination made in the prior charging lien proceedings, in Supreme Court, New York County, and when those legal fees were subject to an enforceable "penalty interest" provision, equal to 24% annual interest.

20.     The Shaw sisters caused damages to SFA in the same period by expending enormous sums of money in their unsuccessful attempt to defeat the attorney fee claims of Greenawalt rather than compromise these attorney's fee claims, which were inherently flawed but ultimately enforceable in some reduced amount, which could have been compromised to a reasonable amount and paid. Upon information and belief, directly or indirectly, the Shaw sisters expended sums to have SFA fund and defend against the legal fee claims of Greenawalt, in amounts not now known to the Estate, but which may have been equal to or exceeded the reduction obtained for these legal fees.

21.     Upon information and belief, the Shaw sister's self-interested conduct caused the total debt for legal fees due to Tunick to increase from January, 2008 by an amount exceeding $800,000.

22.     Upon information and belief, the joint attorney fee claims of Tunick and Greenawalt, which were enforceable in the first instance, as attorney charging liens, against photographic assets and revenues of SFA, could have been reasonably compromised or paid, but for the self-interested conduct of the Shaw sisters in permitting the fixed fee claims of Tunick to accrue annual 24% interest, and the self-interested conduct to spend SFA funds to defeat the Greenawalt fee claims.

23.     Upon information and belief, from January 2008 until the time of SFA's bankruptcy filing, and continuing to the present day, SFA has earned approximately $500,000 in annual revenues, and during the tenure of the Shaw sisters as the "SFA Board", SFA had the financial ability to pay or to compromise, an agreed and manageable basis, the joint legal fee debts due to Tunick and to Greenawalt, but they refused to do so but spent those revenues so SFA reported no net income.

24.     Upon information and belief, with the exception of funds necessary to pay for the basic

operating expenses of SFA, the majority of these revenues were expended by the Shaw sisters, in

the form of salaries paid to themselves and to their family members, or to pay for the enormous

legal fees incurred by them to challenge unsuccessfully the charging lien claims of Greenawalt.

25.     As a consequence of these actions, on or about June 11, 2011, SFA was required to file for

protection under Chapter 11 of the U.S. Bankruptcy Code, in which the primary creditor claims

in which the only secured creditor claims were those of the attorney charging lien creditors, and the

remainder of the creditor claims were primarily minor contractors and vendors for SFA, or were

legal fee claims filed by David Marcus and his law partner, Christopher Serbagi, Esq., seeking

inter alia, payment of legal fee claim denied to them by prior application for such legal fees to the

presiding judge, in the U.S. District Court, after a determination that the legal fees were excessive.

26.     In brief, the only independent bona fide creditors filing claims in the SFA Chapter 11 case

were the two attorney charging lien creditors, Tunick and Greenawalt, whose legal fee claims, as

of the filing of their bankruptcy claims had increased, for Tunick to over $1,760,000 (rounded),

and for Greenawalt, after years of costly litigation funded by SFA to about $886,000 (rounded).

27.     In these bankruptcy proceedings, acting nominally as the majority of the SFA Board, the

Shaw sisters, inter alia, sought unsuccessfully to revoke or nullify the secured status of the two

attorney lien creditor claims, and sought unsuccessfully to persuade the presiding judge that SFA

was not the owner of the copyrights but that the copyrights were owned by the Sam Shaw Inc.

entity created by the Shaw sisters in December 2007, to which the Shaw sisters had allegedly

transferred the copy rights to the Sam Shaw photographs owned by SFA for no consideration.

28.     In the final negotiated and approved Chapter 11 plan for SFA, the company was required

to pay a total sum of $ 1,950,000.00, to the two secured attorney lien creditors, over a payment

period of approximately six years, requiring commitment of most of SFA's future revenues.

29.     Upon information and belief, SFA was required to spend enormous sums of money to prosecute the Chapter 11 bankruptcy proceeding, and the entirety of these expenditures constituted waste and mismanagement of SFA monies from the self-interested actions of the Shaw sisters.

30.     As set forth in detail in this complaint, upon information and belief, the Shaw sisters, and their cooperating family members, engaged in the self-interested conduct described in this complaint for the intentional and improper purpose of seeking both to nullify the legal fee debt due to the attorney that represented them in the Shaw family action, and to increase radically the legal fee debt due to the attorney who represented Larry Shaw in the Shaw family action, with intent and purpose to create an indemnification claim against the Estate of Larry Shaw that, if enforced, would enable the Shaw sisters to extinguish the equity of the Estate in SFA so as to enable them, and the members of their family to become the exclusive owners of SFA and its photo archive.

31.     The claims asserted against the SFA attorney Adelman and the two law firms with which he was associated, inter alia, arise primarily out of two related and improper aspects of the legal representation of Adelman, who upon information and belief, conceived, planned and orchestrated the self-interested legal strategies of the Shaw sisters, (A) by conceiving and explicitly endorsing the creation of a fraudulent conveyance of the SFA copyrights to the newly formed Sam Shaw Inc., which the Shaw sisters owned, in order to "protect" unlawfully the SFA copyrights which were the most valuable asset of SFA, and further (B) by conceiving and implementing the self-interested actions of the Shaw sisters, nominally acting as the SFA Board   to permit the legal fee debt attributable to the Estate of Larry Shaw to increase at the rate of 24% per annum, while supporting and advocating in bad faith expenditure of huge legal fees for the self-interested objective of trying to defeat the legal fees claims of the Shaw sister's attorney in the Shaw family action, obligation to

7

the attorneys, when those fees could reasonably have been compromised to avoid such litigation.

32.     The causes of action against the attorney defendants are pleaded as claims for aiding and abetting the fraudulent schemes of the Shaw sisters, with knowledge of their nature, and as claims for legal malpractice and for the breach of fiduciary duty to SFA and the Estate of Larry Shaw.

33.     The Estate of Larry Shaw has been excluded from the management of SFA's affairs since on or before January 1, 2008, and every election for the board of directors noticed or conducted since that time has resulted in a deadlock vote of the equal 50% groups of SFA shareholders.

34.     Upon information and belief, prior to the death of Larry Shaw, no board of directors was duly elected, and, except for informal communications between the Shaw sisters and Larry Shaw, there was no action taken by these individuals as an SFA Board or as directors of an SFA Board.

35.     Upon information and belief, the Estate is the only party interested in the affairs of SFA with an equity interest in SFA, which is currently able or willing to prosecute these claims, on behalf of the Debtor, as the remainder of shareholders and directors are related to the Shaw sisters.

36.     No demand has been made upon the SFA Board for the relieve sought in this action, or upon the Shaw sisters in their disputed and nominal role as the controlling majority of the SFA Board of Directors, as the Shaw sisters are accused of the improper conduct described in the complaint, and any such demand would be futile.   The Estate asserts claims for the Debtor.

37.     This Court properly has venue of this action, due to the fact that certain of the parties reside in Rockland County and due to the fact that SFA maintains its principal place of business in Rockland County, and/or that it did so at the times pertinent to the disputed herein.

38.     [To the extent this action is removed to the U.S. District Court for the Southern District of New York, and not remanded thereafter, the venue of this action is proper in that District Court.]

8

FIRST CAUSE OF ACTION: DECLARATORY JUDGMENT

TO VOID ANY PURPORTED AGREEMENT TO TRANSFER COPYRIGHTS

TO THE SFA PHOTOGRAPHY COLLECTION TO SAM SHAW, INC.

ASSERTED ON A SHAREHOLDER DERIVATIVE BASIS FOR THE DEBTOR

ON THE GROUNDS THE SHAW SISTERS OWNED NO RIGHTS TO TRANSFER

AS A VIOLATION OF FIDUCIARY DUTIES OWED TO SFA AND THE ESTATE

39.          Plaintiffs repeat and reallege the prior allegations of this complaint.

40.          SFA is a legal entity that was formed to implement a settlement of the Shaw family action that was stipulated and allocuted in a hearing on June 5, 2002.

41.          Inter alia, in that settlement, all photographs of Sam Shaw, and Larry Shaw, his son, were to be owned by a new entity to be named Shaw Family Archives.

42.          Inter alia, in that settlement, any and all rights to commercialize these photography assets were to be transferred to this to-be- newly formed entity: SFA.

43.          Inter alia, that settlement agreement prohibited any commercial use, or gift of photographs taken either by Sam Shaw or Larry Shaw that became the assets of SFA, except through the agency of SFA to show the exclusive rights of the to-be-formed SFA entity to do so, which included provision for treble damages for any unauthorized commercial exploitation of the photographs in the SFA collection by any of the parties to the then-settled Shaw family action.

44.          As a matter of established law and fact, the terms of that settlement which vested in SFA the exclusive rights all future rights to commercialize and/or to make any use of all of the photographs taken by Sam Shaw or Larry Shaw, transferred the photography copyrights to SFA.

9

45.         Pursuant to the terms of the fully allocuted settlement agreement, Larry Shaw became the owner of 50% of the common stock of SFA, and Edith Shaw Marcus and Meta Shaw Stevens each respectively became equal owners of 25% of the common stock of SFA.

46.         Subsequent to its formation, SFA undertook to develop a business based primarily on commercial licensing of photographs in the Shaw family archive, particularly those of Marilyn Monroe, although SFA also sponsored exhibitions and publications of these SFA photographs.

47.         In connection with the licensing of SFA images, most of the work to create the marketing and licensing business for the SFA photographs was done directly by Larry Shaw.

48.         Upon information and belief, Edith Shaw Marcus maintained the archive of SFA photographs as her residence at 143 Independence Avenue, Tappan New York.

49.    Although the revenues from SFA licensing business were not substantial in the first years of operation, by 2006 and/or 2007, SFA was able to earn in the range of $500,000 per year.

50.         During the operation of the SFA business, the photographs from the SFA collection when distributed or published, when licensed for commercial purposes, including in particular the Sam Shaw photographs of Marilyn Monroe, were accompanied by copyright notices that identified Shaw Family Archives as the sole owner of the copyrights on the SFA photographs.

51.         Upon information and belief, the Shaw sisters had knowledge of the use of the Shaw Family Archives copyright notices, and did not dispute or challenge the use of such notices that identified SFA as the copyright owner of SFA photographs, and agreed with that.

52.         Larry Shaw died unexpectedly of natural causes, on October 19, 2007.

53.         Upon information and belief, on or about December 18, 2007, after Larry Shaw died, Edith Shaw Marcus and Meta Shaw Marcus formed Sam Shaw Inc., for the purpose of transferring the Sam Shaw copyrights that had been vested in SFA by the parties' 2002 settlement.

10

54.        Upon information and belief, the Shaw sisters own Sam Shaw Inc.

55.        Upon information and belief, at a date and time not now known to the Estate, and by written instruments not now know to the Estate (the "Copyright Assignment"), or otherwise, the Shaw sisters have purported to transfer or to assign the registered copyrights and future rights to register them for the photographs by Sam Shaw that were properly owned by SFA pursuant to the June, 2002 settlement, to Sam Shaw Inc., without legal right or consideration.

56.        Upon information and belief, at a date and time not now known to the Estate, and by written instruments not now known to the Estate (the "License Agreement"), or otherwise, while purporting to act for SFA's board of directors, the Shaw sisters purport to have made agreements between Sam Shaw Inc., and SFA to acknowledge, or to acquiesce in, the ownership of these SFA copyrights by Sam Shaw Inc. , and to pay royalties to Sam Shaw Inc..

57.        Upon information and belief, from dates beginning in 2008, continuing until the present time, the Shaw sisters have either assigned prior U.S. copyright registrations for Sam Shaw photographs to Sam Shaw Inc., and have filed new copyright registrations for Sam Shaw Inc., with the U.S. Copyright Office, for photographs that are owned by SFA, and have been licensed for use by SFA, without the right or authority to claim ownership of the copyrights.

58.        Upon information and belief, the Shaw sisters have engaged in this continuing course of conduct to claim ownership of the SFA copyrights to Sam Shaw's photographs, in Sam Shaw Inc. in derogation of the rights of SFA, and of their duties as directors on the SFA Board.

59.        Upon information and belief, the Shaw sisters have at no time held or owned any lawful and enforceable ownership interest in copyrights to Sam Shaw photographs.

60.        Upon information and belief, their purported claims to such rights arise out of alleged trust agreements, by which Sam Shaw purported to transfer ownership to the Shaw sisters

11

of his photographs and copyrights, when such rights were sub judice in the Shaw family action.

61.          Upon information and belief, whatever if any alleged ownership interests in the

copyrights to Sam Shaw photographs purportedly arose from such trust agreements were waived

and released, and were not reserved in the final June 5, 2002 settlement of the Shaw family action.

62.          Upon information and belief, Edith Shaw Marcus and/or Meta Shaw Stevens

purport to have acquired title or ownership of the copyrights to the works of Sam Shaw prior to the

June 5, 2002 settlement of the Shaw family action, in two invalid trust agreements..

63.          The Shaw family action complaint was dated September 15, 1994.

64.          Upon information and belief, on or about October 4, 1994, Sam Shaw

executed the first of two trust agreements, which purported to transfer ownership of his

photographs and to the copyrights to his photographs to the Shaw sisters and other family

members, excluding only Larry Shaw and his wife Susan Shaw as trust beneficiaries.

65.          Upon information and belief, on or about April 22, 1998, Sam Shaw

executed the second of two trust agreements, which purported to transfer ownership of his

photographs and the copyrights a second time, but then exclusively to the Shaw sisters.

66.          Upon information and belief, these purported transfers were invalid and

void when they were made as the ownership of the photographs and copyrights was then sub

judice in the Shaw Family action, and subject to the claims of Larry Shaw in that action.

67.          Upon information and belief, the purported transfer of these copyrights

to the Shaw sisters, during the pendency of the Shaw Family action was done with the intention to

complete a fraudulent conveyance of these copyrights to defeat the pleaded claims then being

prosecuted by their brother, Larry Shaw, in the Shaw Family action, who claimed such rights.

68.          Upon information and belief, effective as of at least April, 1999, after the death of

12

Sam Shaw, the Shaw sisters purported to be the beneficial owners of the Sam Shaw copyrights, to the extent that such rights were created under the last trust agreement executed in April, 1998.

69.         Upon information and belief, prior to the death of Sam Shaw in April, 1999, neither the existence nor the trust were disclosed in the Shaw family action, nor was there any application to substitute the trust or the trust beneficiaries of the last April 22, 1998 trust agreement as plaintiffs in the Shaw family action pending in Supreme Court, New York County.

70.         Upon information and belief, by confirming the June 5, 2002, settlement agreement of the Shaw Family action that was stipulated and allocated in New York Supreme Court in which the Shaw sisters were represented by counsel, when they affirmed the settlement, any right, title or interest claimed by the Shaw sisters as the "owners" of either the Sam Shaw photographs or the copyrights to those photographs was surrendered and released by transferring these rights to SFA.

71.         As shareholders and as purported directors, the Shaw sisters owed a fiduciary duty to SFA to preserve and protect its assets, including its most valuable copyright interests, and to insure that their actions as shareholders or purported directors were done for the benefit of SFA and all of its shareholders, including the Estate of Larry Shaw, which was breached by their conduct in forming Sam Shaw Inc., and purporting to transfer the SFA copyrights to Sam Shaw Inc., which had no   justification and was a fraudulent conveyance as to the attorney creditors. .

72.         The Shaw sisters owed a fiduciary duty to the Estate as the fifty percent owner of SFA stock, which had no ability to control or to participate in the management of SFA.

73.         The Shaw sisters have breached that fiduciary obligation to SFA and to the Estate by purporting to transfer the ownership of the Sam Shaw copyrights to Sam Shaw Inc.

74.         The Sam Shaw copyrights are essential assets of SFA, which are essential to the rights and interests of SFA, as its ability to license and make commercial use of the Sam Shaw

photographs, and in particular the photographs of Marilyn Monroe, derive from the copyrights.

75.        The rights and interest of SFA and the Estate have been damaged.

76.        The Debtor, and the Estate as the 50%   shareholder suing derivatively

for the benefit of SFA, has no adequate remedy at law to redress the Shaw sister's actions.

77.        SFA will suffer irreparable injury, if it is deprived of copyright ownership.

78.        By reason of the foregoing, judgment should be entered in this action, to

declare as void and unenforceable any purported transfer of the copyrights to the photographs of

Sam Shaw in the SFA archive to Sam Shaw Inc., and to declare void and unenforceable any

agreement purportedly made by SFA with Sam Shaw Inc., exclusively done, if done, on the

self-interested and unlawful of the Shaw sisters, as the purported majority of SFA's board of

directors, to require SFA to license copyrights from Sam Shaw Inc., or to pay copyright fees to

Sam Shaw Inc., , and/or to acknowledge Sam Shaw Inc. as owner of the Sam Shaw copyrights.

SECOND CAUSE OF ACTION: DERIVATIVE CLAIMS BY SFA TO DECLARE

ASSIGNMENT OF COPYRIGHTS OR REGISTRATION OF COPYRIGHTS

TO SAM SHAW PHOTOGRAPHS TO SAM SHAW INC. TO BE VOID AS

FRAUDULENT CONVEYANCES AS TO THE ATTORNEY LIEN CREDITORS

AS TO SFA ITSELF AND THE ESTATE AS A 50% SFA SHAREHOLDER

79.        Plaintiffs repeat and reallege the prior paragraphs of this complaint.

80.        On September 24, 2003, a special proceeding was commenced in the

New York County Supreme Court, by Tunick to enforce a charging lien against the

14

assets of SFA for legal fees due to him from Larry Shaw in the Shaw Family action,

captioned as Tunick v. Larry Shaw, et.al., Index No., 116636/003.

81.     In the special proceeding, brought under Section 475 of the Judiciary Law,

the Shaw sisters, Edith Shaw Marcus and Meta Shaw Marcus, were named as party respondents,

together with Larry Shaw, and the new SFA entity was also named therein as a party respondent.

82.     Greenawalt thereafter joined in that proceeding to enforce a charging lien against the

assets of SFA for legal fees due to him from the Estate of Sam Shaw, and/or from the Shaw sisters

as  "temporary administrators" of the Estate of Sam Shaw in the Shaw family action.

83.     Upon information and belief, the charging lien sought to be enforced in that special

proceeding, brought under Section 475 , N.Y. Judiciary Law, were effective as to the charging lien

of Tunick as of the commencement of the Shaw Family action, in or after September 1994, and

were effective as to Greenawalt as of a later date when Greenawalt had appeared in that action.

84.     Upon information and belief, the SFA Copyright Assignment and the SFA

Licensing Agreement, when done, were fraudulent conveyances as to these attorney lien creditors.

85.     Upon information and belief, the Shaw sisters, acting in concert with other

parties identified below, including particularly Adelman and one or more law firms, made the SFA

Copyright Assignment and the SFA Licensing Agreement, with the intent to defraud the attorney

lien creditors, Tunick and Greenawalt with their charging lien against SFA assets and income.

86.     Upon information and belief, in connection with these unlawful copyright transfers,

Adelman specifically declared that the purpose of transferring the copyrights of Sam Shaw to the

then newly formed Sam Shaw Inc. was to protect those copyrights from attachment or seizure by

either of the two attorneys who were then prosecuting their charging liens rights SFA's assets.

15

87.      Upon information and belief, the Shaw sisters explicitly agreed to and endorsed the course

of conduct proposed and directed by Adelman, with knowledge that the transfers were unlawful.

88.      Upon information and belief, these two "agreements" by SFA together constitute

a fraudulent conveyance that violates section 276, New York Debtor Creditor Law.

89.      As set forth hereinabove, when the Shaw sisters entered into the SFA

Copyright Agreement and the SFA Licensing Agreement, however and whenever that was done,

with the latter being made on behalf of SFA as a party, both Shaw sisters and SFA were

respondents in the special proceeding for fees pending against them by Tunick and Greenawalt.

90.      Upon information, either no consideration whatsoever, or no fair consideration was

paid for the alleged transfer of the Sam Shaw copyrights by the Shaw sisters to Sam Shaw Inc., and

further the alleged transfer of copyrights under the SFA Copyright Assignment is an aggravated or

egregious fraudulent conveyance, as the Shaw sisters had no bona fide claim to the ownership of

the copyrights to the Sam Shaw photographs owned by SFA when they purported to assign them.

91.      Upon information and belief, no consideration whatsoever or no fair consideration

was paid to SFA by Sam Shaw Inc. for the purported acknowledgment by SFA of the purported

ownership of the SFA copyrights by Sam Shaw Inc., and the payment of royalties by SFA to Sam

Shaw Inc., was both a waste of SFA assets, and a pretext to make it appear as though any purported

SFA copyright licensing agreement was a bona fide agreement, when it was in fact a fraud.

92.      Upon information and belief, these two alleged agreements together constitute a

fraudulent conveyance that violates section 273-a, New York Debtor Creditor Law.

93.      Upon information and belief, as to the (not specifically known) date of the Shaw

sisters apparent approval of the SFA Copyright Agreement and/ or the SFA Licensing Agreement,

in or about 2008, however, if at all, it was manifested, the potential liability of SFA, as the legal

16

entity that was then subject to the combined claims for attorneys' fees outstanding statutory

charging lien, exceeded an amount in excess of $ 2.0 million so that the purported taking of the

SFA copyrights out of the true ownership of SFA rendered SFA potentially insolvent as to the

future enforcement of the amount of the charging liens prosecuted by Tunick and Greenawalt.

94.        Upon information and belief, these two purported agreements together constitute a

fraudulent conveyance that violates section 273, New York Debtor Creditor Law.

95.        Upon information and belief, these two agreements were part of a plan or scheme to

effect the fraudulent conveyance of SFA copyrights, which was done, with the agreed and jointly

acknowledged purpose of impairing or impeding the charging lien of the attorney lien creditors, at

the risk of sacrificing the equity interest of SFA in the Sam Shaw copyrights, and to devalue the

equity interests of the Estate of Larry Shaw by placing the SFA copyright assets outside of SFA.

96.     Upon information and belief, the fraudulent conveyance of these copyright assets was done

for the explicitly acknowledged and wrongful purpose of enabling the Shaw sisters to retain the

ownership and control of the SFA copyrights, in the event of any future judgment enforcement by

the attorney lien creditors, or in the event of a bankruptcy filing to avoid judgment enforcement..

97.        Upon information and belief, arising from a review of the registry of copyrights at

the U.S. Copyright Office, on the basis of these two invalid and fraudulently created agreements,

Sam Shaw Inc., and the Shaw sisters have engaged in a continuing course of conduct, beginning in

or about July 2008, by which they assigned previously registered SFA copyrights to Sam Shaw

Inc., or they register new SFA copyrights for Sam Shaw Inc., when SFA owned those copyrights.

98.        Upon information and belief, the continued course of conduct in filing of these new

copyright registrations, and/or the filing of assignments to prior copyright registrations for the

photographs of Sam Shaw to that they came to be registered in the name of Sam Shaw Inc., has

17

been done by the Shaw sisters with the specific intent to defraud the attorney lien creditors, to

deprive SFA of the rights arising from its direct and unconditional ownership of its copyrights..

99.         Upon information and belief, the Shaw sisters registration and/or re-assignment

to Sam Shaw Inc. of previously filed registrations, was done in reckless disregard of the rights of

SFA to assert and to control the ownership of the Sam Shaw photographs, and of the rights of the

Estate to protect the value of its equity interest in SFA by continuing the ownership of the Debtor

to the copyrights on all of the photographs in its archive, including those of Sam Shaw and those of

Larry Shaw, which were established pursuant to the 2002 settlement of the Shaw family action.

100.         SFA, which is represented herein on a shareholder derivative basis by the Estate,

has no adequate remedy at law, and will suffer irreparable injury if the claimed rights of Sam Shaw

Inc., to become the owner of the SFA copyrights on the photographs of Sam Shaw is recognized.

101.         By reason of the foregoing, SFA is entitled to a judgment declaring that any and all

assignments of prior registrations, or new registrations, by the Shaw sisters, of copyrights for any

photographs in the SFA photography collection, together with their prior and continuing course of

conduct by which the Shaw sisters purport to exercise any rights under either the SFA Copyright

Assignment or the SFA License Agreement are null and void, insofar as they are fraudulent

conveyances under the several referenced provisions of the New York debtor & creditor law.


THIRD CAUSE OF ACTION: MANDATORY INJUNCTION AGAINST

THE SHAW SISTERS AND SAM SHAW INC TO COMPEL THEM

TO TRANSFER TO THE DEBTOR PREVIOUSLY REGISTERED COPYRIGHTS

FOR THE   SAM SHAW PHOTOGRAPHS, TO PROHIBIT FUTURE REGISTRATION

OF SUCH COPYRIGHTS IN THEIR NAME AND TO COMPEL THE SHAW SISTERS

TO CAUSE THE DEBTOR TO USE COPYRIGHT NOTICES IN ITS LICENSING

BUSINESS TO IDENTIFY SHAW FAMILY ARCHIVES AS COPYRIGHT OWNER.

102.        Plaintiffs repeat and reallege the prior paragraphs of this complaint.

103.        Existing copyright registrations, and registrations for any of the Sam Shaw

photographs belong to SFA, exclusively and should be registered in the name of SFA.

104.        As set forth hereinabove, neither the Shaw sisters nor their company, Sam

Shaw Inc. holds a lawful claim or interest in the copyrights to Sam Shaw photographs.,

105.        Sam Shaw Inc., and the Shaw sisters must be ordered to transfer or assign any and

all copyright registrations, or pending or future registrations to SFA, and to refrain from making or

attempting to make any future copyright registrations to Sam Shaw photographs to Sam Shaw Inc..

106.        The Estate, acting on behalf of the Debtor,   has no adequate legal remedy.

107.        The relief sought in this cause of action is sought for the benefit of SFA, by

the Estate of Larry Shaw, as a 50% shareholder of SFA, on a shareholder derivative basis.

108.        By reason of the foregoing, this Court should enter judgment for the relief

described above, and below as a mandatory injunction, to wit:

A) Sam Shaw Inc. shall, and the Shaw sisters shall cause Sam Shaw Inc. to,

transfer to Shaw Family Archives Ltd. all existing copyright registrations

and assignments of copyright registrations, by instruments as may be

required by the U. S. Copyright Office for that purpose,

B) Sam Shaw Inc., and the Shaw sisters shall cause Sam Shaw Inc. to, cease

and desist, in perpetuity, from registering copyrights to Sam Shaw photography in

19

the name of Sam Shaw Inc., or in the case of the Shaw sisters, in their own name,
the names of their children or any third party.

C) SFA henceforth shall make exclusive use of copyright notices for any of
the photographs in the SFA archive for any purpose by designating "Shaw Family
Archives" or "Shaw Family Archives, Ltd." as   copyright owner.


FOURTH CAUSE OF ACTION: DISGORGEMENT OF COPYRIGHT ROYALTIES

109.          Plaintiffs repeat and reallege the prior allegations in the complaint.

110.          Upon information and belief, Sam Shaw Inc. has been paid royalties by SFA on
under the SFA License Agreement, in amount not now known to the Estate;

111.          The payment of such copyright royalties was confirmed by a creditor claim filed by
Sam Shaw Inc. in the Chapter 11 bankruptcy case that was filed by SFA, in or about June 2011.

112.          Sam Shaw Inc. had no legal right or interest to be paid such royalties.

113.          SFA has been damaged by the payment of any such royalties.
Upon information and belief, Sam Shaw Inc. is not a bona fide independent legal entity or business
corporation but is merely an alter ego of the Shaw sisters, being used for the attempted fraudulent
conveyance of the SFA copyrights by the Shaw sisters, as an attempt to acquire exclusive control
of the SFA copyrights, in derogation of the rights of SFA and the Estate as an SFA shareholder.

114.   By reason of the foregoing, judgment should be entered against Sam Shaw Inc., requiring
the disgorgement or repayment any royalties previously paid by SFA, and any such   judgment
should be determined to be enforceable directly against the assets of the Shaw sisters personally.

FIFTH CAUSE OF ACTION:   DAMAGES FOR WASTE AND MISMANAGEMENT:

FAILURE AND REFUSAL OF THE SHAW SISTERS "SFA BOARD" TO PAY TUNICK

FEES; AUTHORIZATION OF EXCESSIVE FUNDS TO DEFEAT GREENAWALT FEES

115.     Plaintiffs repeat and reallege the prior allegations in the complaint.

116.     From in or before January 2008 to the present, the Shaw sisters – Edie Shaw Marcus and

Meta Shaw Stevens – purported to act as a controlling two-member majority of SFA, and assumed

the role of being directly and solely responsible for the total management of the affairs of SFA.

117.     As of in or before January, 2008, the prosecution of the secured attorney charging liens

being conducted against SFA had advanced to the point at which judicial determinations had been

made and sustained after appeal to the Appellate Division, to the effect that all of the assets and

revenues of SFA were subject to the charging lien of both attorneys from the Shaw family action.

118.     With regard to the attorney charging lien claims made by Tunick, the attorney who had

represented Larry Shaw in the Shaw family action, a charging lien in the amount of approximately

$575,000.00 (rounded) had been already been upheld and affirmed on appeal to the Appellate

Division as enforceable against SFA assets, and those courts had further upheld and affirmed the

high interest provision in the Tunick retainer agreement, which charged 24% annual interest.

119.     Despite demand, during their purported tenure as the controlling members of the SFA

board, the Shaw sisters failed and refused to make payments out of SFA revenues to pay the

judicially determined legal fees of Tunick, which were enforceable against the assets and revenues

of SFA, due to judicial determinations as to the scope and amount of the attorney charging liens.

120.     Inter alia, the fee claim of Tunick was determined to be the subject of an account stated by

arising from the fact that the Tunick law office had regularly delivered invoices for its services.

121.     Upon information and belief, as a result of the refusal by the Shaw sisters, nominally acting

21

as the controlling two-person majority of the SFA Board of Directors, the total amount of the fees

subject to enforcement under the SFA charging lien needlessly was increased by over $800,000.

122.     With regard to the charging lien of Greenawalt, the attorney for the Estate of Sam Shaw,

and the Shaw sisters, acting as the "temporary administrators" of his estate, the amount of the legal

fees claimed by Greenawalt was approximately $1.0 million but that claim was problematic.

123.     Inter alia, the Greenawalt firm had not maintained time records for its legal services, and

the invoice for its legal fees was not delivered until after settlement of the Shaw family action.

124.     Upon information and belief, while refusing to make any payments to satisfy the Tunick

charging lien from in or before January, 2008, and while acting as the SFA Board , the Shaw sisters

authorized the expenditure of enormous sums to paid by SFA, to Adelman and his law firms,  ,

with the objective of extinguishing the fee claims of Tunick, without realistic chance of success.

125.     Upon information and belief, the actions taken by the Shaw sisters in this regard were

Exclusively driven by their self-interest in reducing the personal liability, or that of the Estate of

Sam Shaw, for indemnification of legal fees paid by SFA to Greenawalt for the charging lien.

126.     Upon information and belief, the fees claimed by Greenawalt should have been comprised.

127.     In connection with their attempt to defeat the charging lien claim of Greenawalt, the Shaw

sisters litigated for year in the Supreme Court, and authorized counsel to defend against the fee

claims of Greenawalt in a trial before a judicial hearing office that lasted over 20 days, and to

further seek to invalidate the adverse determination of that hearing office, in motion practice.

128.     Upon information and belief, the final amount awarded on the Greenawalt charging lien

was the approximate amount of $490,000 (rounded) with legal interest from December, 2004.

129.     As a result of this unsuccessful litigation, as of in or about June, 2011, the total legal fee

claim of Greenawalt was for the total sum of $880,000 (rounded) and the total legal fee claim of

22

Tunick was approximately $1,760,000 (rounded) for total legal fee debt of $2,640,000 (rounded).

130.    Upon information and belief, based on a literal review of the lengthy opinion of the judicial hearing officer that presided over the hearing to determine the Greenawalt legal fees, and the explicit rulings of the judicial hearing officer to that effect, the Shaw sisters on multiple occasions gave false, misleading and perjured testimony in bad faith to defeat the fee claims of Greenawalt.

131.    Upon information and belief, while the Shaw sisters pursued this bad faith attempt to defeat the Greenawalt fee claim, they knowingly and intentionally permitted the outstanding debt of SFA for the attorney fees charged by Tunick to increase at the rate of 24% annually from January 2008.

132.    Upon information and belief, defendant Adelman was the attorney who represented SFA in the hearing and related proceedings to defeat the legal fee claims of Greenawalt, and during that representation, Adelman was first associated with Robinson Brog and then with Meister Seelig.

133.    Upon information and belief, SFA paid literally hundreds of thousands of dollars for the services of Adelman, and the two law firms with which he was associated in this proceedings.

134.    Plaintiffs do not have access to or current knowledge of the total fees paid to them as the Shaw sisters refuse to provide financial information to the Estate, other than annual K-1 reports

135.    Upon information and belief, David Marcus and his law partner appeared respectively for Edie Shaw Marcus and Meta Shaw Stevens, and their fees were paid directly or indirectly by SFA.

136.    The self-interested actions of the Shaw sisters, both in authorizing their unsuccessful, bad faith, and expensive litigation to defeat the legal fee claims of Greenawalt and in their refusal to make payments on the fixed, and high interest bearing charging lien claim of Tunick, precludes them from seeking immunity from liability under the business judgment rule, or other similar rule.

137.    As a result of the final determination of the two joint attorney charging liens, and the liability that arose from the gross mismanagement of the attorney charging lien claims, SFA was

23

required to file a petition under Chapter 11 of the U.S. Bankruptcy Code, and to enter into a plan

which required SFA to make payments to the attorney lien creditor attorneys for $1,950,000.00.

138.    In that bankruptcy case, in connection with motions made before the Bankruptcy Court

to subordinate or to re-litigate the charging lien rulings of the Supreme Court, at the direction of

the Shaw sisters, and David Marcus – who purported to be of counsel to the bankruptcy attorney

counsel retained by SFA – SFA was induced or caused to make frivolous and invalid arguments,

made clearly in bad faith, which effectively requested the Bankruptcy Court to re-litigate the prior

decisions of the New York Supreme Court, which determined and affirmed the two charging liens.

139.    That application was denied after the expenditure of significant legal fees to counsel.

140.    In that bankruptcy case, in connection with an application to deny the secured attorney lien

creditors, the right to enforce their lien against the copyrights for the photographs in the SFA

archive, Melissa Stevens was designated to speak to the Court on behalf of SFA, and on behalf of

her mother, Meta Shaw Stevens, her aunt Edie Shaw Marcus and the Sam Shaw Inc. legal entity.

141.    In that presentation, Stevens made false and misleading statements to the Court as to the

origin of her mother's and her aunt's alleged ownership claim to the SFA copyrights, and she also

made the false and misleading statement to the Court that, during the period when SFA was doing

business until the death of Larry Shaw in October, 2007, SFA displayed copyright notices to state

that Shaw Family Archives, Ltd. was the owner of the copyrights to Sam Shaw's photographs.

142.    In prior submissions to the Bankruptcy Court, the Estate had submitted documentary

Evidence to establish that SFA had systematically used copyright notices naming the Shaw Family

Archives, Ltd, as the copyright owner, but that this practice had changed after Larry Shaw died.

143.    That application was denied after significant expenditures by SFA to pay counsel.

144.    In general, SFA was required to spend hundreds of thousands of dollars in legal expenses

24

and other expenses in the Chapter 11 bankruptcy case, all of which could have been avoided by if the claims by the attorney charging lien creditors had been properly handled by the Shaw sisters.

145.     Under the final approved Chapter 11 reorganization plan, SFA was required to pay to the two attorney lien creditors, the total sum of $ 1,950,000, payable over a six-year payment term, subject to a potential liquidation of its assets, in the event of a default by SFA under the plan.

146.     The foregoing actions by the Shaw sisters, nominally acting as the SFA Board, constituted waste and mismanagement of critical disputes relating to the secured attorney charging lien claims, which arose, inter alia, from the self-interested manner in which the Shaw sisters acted.

147.     SFA has suffered damages in an amount to be determined in excess of $1.5 million, as a result of the self-interested actions of the Shaw sisters, acting nominally as the two-person majority of its Board of Directors, who should be held personally liable for those damages, with the monies obtained from the judgment against them used to make payment of the charging lien.

148.     These damages include the unnecessary increase in the interest accruing on the fee claims of Tunick at 24% per annum, the expenditure of monies to Adelman and his law firms for the self-interested attempt to extinguish the fee claims of Greenawalt, the expenses incurred as a result of the unnecessary and avoidable filing of a Chapter 11 petition for SFA in June 2011, and the lost opportunities suffered by SFA, as a result of the diversion of SFA revenues to these expenditures.

149.     These claims for waste and mismanagement of the attorney charging lien claims are asserted as causes of action for the benefit of SFA, by the Estate as a 50% shareholder of SFA.

150.     By reason of the foregoing, judgment should be entered against the Shaw sisters, for waste and mismanagement in amounts to be determined by this Court, but reasonably believed to exceed the sum of $1.5 million with legal interest on those damages as prescribed by law.

SIXTH CAUSE OF ACTION:   RECOUPMENT OF SALARIES PURPORTEDLY PAID

TO THE SHAW SISTERS, AS BEING SUBSTITUTES FOR PROFIT DISTRIBUTIONS

AFTER THE SHAW SISTERS TRANSFERRED THEIR STOCKS TO RELATIVES

151.    Plaintiffs repeat and reallege the allegations in the prior paragraphs of this complaint.

152.    Subsequent to the death of Larry Shaw, the Shaw sisters transferred substantial shares of their SFA stock to the children and/or other close relatives for no payment or consideration.

153.    Upon information and belief, these transfers of stock were done in bad faith, to effect a fraudulent conveyance of the Shaw sisters stock to prevent the seizure or garnishment of that stock by the then anticipated final judgment to satisfy the charging lien claims of Greenawalt.

154.    Upon information and belief, in or after January 2008, the Shaw sisters authorized to make payments to themselves in the form of fixed salaries to enable the Shaw sisters to share in the profits of SFA, without being required to make distributions to the Estate as a shareholder.

155.    Upon information and belief, based on a review of the filings made by SFA in its Chapter 11 bankruptcy case, the Shaw sisters were each jointly paid approximately $40,000 per year.

156.    Upon information and belief, the total amount paid by the Shaw sisters to themselves, as a self-interested action, from January, 2008 to the present is the approximate amount of $500,000.

157.    Upon information and belief, these payments constitute a violation of the original terms of the June, 2002 settlement agreement, requiring pro rata distributions of profits to shareholders.

158.    SFA has suffered damages in amounts to be determined but approximately $500,000.00, as a result of the self-interested actions of the Shaw sisters, acting nominally as the two-person majority of its Board of Directors, who should be held personally liable for those damages, with the monies obtained from the judgment against them used to make payment of the outstanding debt due to Tunick and Greenawalt on their secured charging liens, under the approved Chapter 11 plan.

26

SEVENTH CAUSE OF ACTION:  EQUITABLE RESTRUCTURING OF SFA CORPORATE

MANAGEMENT AS TO THE CONSTITUTION AND ELECTION OF THE SFA BOARD

151.    Plaintiffs repeat and reallege the allegations in the prior paragraphs of this complaint.

159.    As set forth hereinabove, the Shaw sisters have managed the affairs of SFA since in or

about January 2008, in a self-interested manner, for the exclusive personal benefit without regard

to the rights and interests of the Estate of Larry Shaw, as the owner of 50% of the SFA stock.

160.    Since in and after the death of Larry Shaw in October 2007, there has been no election of

the Shaw sisters to the SFA Board, or a recognition of their purported right to control the affairs of

SFA as a two-person majority of the SFA Board who have never been elected to that position.

161.    Under the original June, 2002 settlement agreement, provisions were inserted into the

transcribed and allocated settlement stipulation to avoid a deadlock between the equal 50% groups

of SFA stock which were being created for the two previously "warring" sides of the Shaw family,

to wit: the Shaw sisters and Larry Shaw as the parties who were therein designated and agreed to

own, respectively 50% of the stock of SFA, by the grant of equal 25% shares of SFA stock (by

each of the Shaw sisters) and a 50% of the shares of SFA stock (by Larry Shaw as sole owner) who

162.    Upon information and belief, arising directly from the stipulated terms in the Court record,

the terms put forward in the June 2002 settlement agreement provided for the designation of a

so-called "special agent", who would be responsible for making judgments on behalf of SFA with

regard to its future business affairs, in the event the 50% stock share groups disagreed what to do.

163.    Upon information and belief, in lieu of designating such a "special agent", the parties

cooperated in the future and ongoing management of SFA by permitting Larry Shaw to assume

primary responsibility for operating the company and distributing net revenues to shareholders.

164. Upon information and belief, in the period of time from the formation of SFA until the death of Larry Shaw, the shareholders of SFA did not hold formal board meetings or conduct elections to the Board, and the purported claim of the Shaw sisters to be the controlling members of the SFA Board, arises solely from the designation the Shaw sisters and Larry Shaw a directors.

165. Subsequent to the death of Larry Shaw, as set forth in detail hereinabove, the Shaw sisters excluded the Estate from the management of SFA and the control of SFA through the SFA Board.

166. Inter alia, as set forth in part hereinabove, during this period from in or about January 2008 until the present, the Shaw sisters have controlled the SFA Board, and managed the affairs of SFA in a self-interested manner, inter alia, by hiring and paying salaries to themselves and their family members, by failing and refusing to take necessary actions to pay and/ or to compromise the legal fee claims of Tunick and Greenawalt, respectively, so as to cause monetary damages to SFA, and by creating the circumstances, which were avoidable and unnecessary, to require SFA to file for bankruptcy protection under Chapter 11, and to oppose therein the payment of the legal fee debts.

167. Upon information and belief, as set forth more fully below, the Shaw sisters also engaged in a self-interested scheme or plan to exclude from the business affairs of SFA, certain persons who had worked closely and creatively with Larry Shaw, and helped to build the SFA business.

168. In their entirety, these self-interested actions by the Shaw sisters constituted improper and oppressive conduct as to the rights and interests of the Estate under applicable provision of the New York Business Corporation Law, so as to create potential rights to dissolve SFA or to be paid the fair market value of SFA, as a remedy for the oppressive conduct of the Shaw sisters in SFA.

169. SFA and the Estate has no adequate legal remedy under these provisions of the New York Business Corporation, or other available legal remedies, inter alia, due to the enormous debt load that exists and is enforceable against SFA from the Shaw sisters prior mismanagement of the fee

28

claims of Tunick and Greenawalt as to their secured attorney charging liens which are now subject

to enforcement in such a way as to make it impossible or impractical to assert such legal claims.

170.    As set forth hereinabove, the current crisis in the financial affairs of SFA arises from the

claimed and abused rights of the Shaw sisters to exercise complete control of the SFA affairs,

when they only own or control (through prior assignment of their shares to family members) half

of outstanding issues of SFA stock, which enables them to disregard the Estate's interests, and to

jeopardize the continued existence and future profitability of SFA by their self-interested actions.

171.    As proper equitable relief to remedy these circumstances, the manner in which the SFA

Board is constituted and elected must be imposed by this Court, to recreate in present time, the

type of independent third party mechanism to avoid shareholder abuse and deadlock, which was

the original stipulated goal or objective or providing for the retention of an SFA "special agent".

172.    Upon information and belief, the equitable relief required to remedy these circumstances

consists following provisions, or other similar provisions to accomplish the same outcome, to wit;

 . Proportional voting for the membership of the SFA Board so that each of the original 50%

        shareholder groups can select or vote for two separate members of the SFA Board,

 . Professional retainer of fifth independent member of the SFA Board, by agreement or

        by court appointment, to break any deadlock in the voting by this five-person SFA board,

        which would be duly authorized to determine by majority board vote any disputed issue.

173.    The request of this equitable relief is made by the Estate on a shareholder derivative basis

for the benefit of SFA, and is neutral as to any substantive interest of right of the parties.

174.    By reason of the foregoing, this Court should be award as an equitable judgment a direction

and order the constitution of the SFA Board and the manner of its election as requested herein.

EIGHTH CAUSE OF ACTION: DAMAGES AGAINST INDIVIDUALS, INCLUDING

ADELAMAN, AND HIS LAW FIRMS FOR BREACH OF FIDUCIARY DUTY ARISING

FROM THEIR PARTICIPATION IN THE FRAUDULENT SCHEME OF THE SHAW

SISTERS TO EXTINGUISH THE EQUITY INTERESTS OF THE ESTATE IN SFA

175. Plaintiffs repeat and reallege the allegations in the prior paragraphs of this complaint.

176. From in or about January 2008, until the present time, as set forth hereinabove, the Shaw

sisters have directed and participated in a fraudulent scheme or plan to extinguish the equity

interests of the Estate in SFA, and to capture complete ownership and control of SFA.

177. Upon information and belied, the manipulation and the management of the disputed and

undisputed claims of Greenawalt and Tunick, respectively from the judicially affirmed attorney

charging liens, together with the diversion of SFA net revenues exclusively to themselves or the

members of their family, was designed, intended and implemented to destroy the equity rights of

the Estate in SFA, and to secure to themselves the most valuable asset of SFA, its copyrights.

178. The Shaw sisters, even after the transfer of the majority of their stocks to their family

members in or after the death of Larry Shaw in October 2007, remained SFA shareholders.

179. As SFA shareholders and directors, they owed a fiduciary duty to the Estate.

180. Upon information and belief, David Marcus and Melissa Stevens acquired certain shares of

SFA stock from the Shaw sisters, in or after October, 2007 and held stock from January 2008.

181. As SFA shareholders, Mr. Marcus and Ms. Stevens had fiduciary duties to the Estate.

182. Upon information and belief, Mr. Marcus was regularly retained as counsel for SFA.

183. Upon information and belief, Ms. Stevens was retained as manager of SFA.

184. Upon information and belief, in their respective capacities as counsel and manager of SFA,

these two individuals acted consistently and loyally to the Shaw sisters to implement their plan and

30

scheme to deprive the Estate of any financial benefit from SFA and to extinguish its equity.

185.    Upon information and belief, in their respective capacities as counsel and manager of SFA, Mr. Marcus and Ms. Stevens performed their professional and/ or managerial services for SFA systematically and consistently to exclude the Estate from involvement in the management of SFA or the distribution of its net revenues to SFA, in ways not currently known in detail to the Estate because of the fact that the Shaw sisters and their family members refused to provide to the Estate any information about the internal management and third party business affairs of SFA.

186.    Each of these individuals had fiduciary duties to SFA and to the Estate.

187.    Upon information and belief, Adelman was retained as counsel for SFA in or before January 2008, and as counsel, Adelman had fiduciary duties to SFA and to the Estate.

188.    Upon information and belief, Robinson Brog and Meister Seelig as the law firms with whom Adelman was associated when he acted as counsel for SFA, had such fiduciary duties.

189.    As set forth hereinabove, Adelman was personally and directly responsible for proposing and implementing the attempted fraudulent conveyance of the SFA copyrights by the Shaw sisters to their wholly-owned corporation Sam Shaw Inc. to interfere with enforcement of the charging lien claims for legal fees, from Tunick and Greenawalt after the Shaw sisters controlled SFA.

190.    Upon information and belief, Adelman was personally and directly responsible for directing and implementing the manner in which the Shaw sisters, acting nominally as the SFA Board, managed and manipulated the SFA response to the charging lien claims by gratuitously permitting the annual 24% interest rate to accrue on the Tunick legal fees, while directing the Shaw sisters to expend enormous sums in legal fees payable to Adelman and his law firms to seek to extinguish the Greenawalt legal fee claims rather than compromise them reasonably and pay them.

191.    Upon information and belief, David Marcus, Melissa Stevens and Adelman personally

know and understood that the improper purpose of these tactics in handling these attorney charging lien claims was to compromise the equity interests of the Estate while attempting to eliminate any legal fee debts arising from Greenawalt's representation of the Shaw sisters and/or the Sam Shaw estate, so as to enable them to seize the Estate's stock while wasting SFA revenues.

192.    As a result of these activities by the Shaw sisters, Mr. Marcus, Ms. Stevens and Adelman, Enormous and unnecessary legal fee debts were ultimately imposed on SFA, which wasted its financial resources, and, as shown by the bankruptcy filing, jeopardized its continued existence.

193.    Any party with fiduciary duties to other parties, here SFA and the Estate, owes a duty of the utmost care and good faith to those parties to whom such fiduciary duties are owed by them.

194.    The Shaw sisters, Mr. Marcus, Ms. Stevens and Adelman violated those duties.

195.    SFA has suffered damages, and the Estate has suffered damages; however these claims are asserted as causes of action on behalf of SFA by the Estate on a shareholder derivative basis, so that any and all damage awards are to be paid to SFA to enable SFA to reduce the legal fee debts.

196.    By reason of the foregoing, this Court should enter judgment against the Shaw sisters, David Marcus, Melissa Stevens, and Adelman, individually and against the law firms through which he provided legal services to SFA in amounts to be determined but reasonably believed to exceed $1.5 million, together with legal interests and the costs incurred in prosecuting this action.

32

NINTH CAUSE OF ACTION:   DAMAGES AGAINST DAVID MARCUS, MELISSA

STEVENS, ADELMAN, AND HIS LAW FIRMS FOR AIDING ABETTING THE SHAW

SITSTERS FRAUDULENT PLAN AND SCHEME TO DEPRIVE THE ESTATE OF ITs

EQUITY OR ANY FINANCIAL BENEFIT FROM THE OWNERSHIP OF SFA STOCK.

151.    Plaintiffs repeat and reallege the allegations in the prior paragraphs of this complaint.

197.    Upon information and belief, from the approximate time that the Shaw sisters took

control of SFA after the death of Larry Shaw, until the present, Adelman, David Marcus and

Melissa Stevens, have known or showed reckless disregard for the fact that the conduct of the

Shaw sisters, nominally acting as a two-person majority of the SFA Board, was being done

for the specific intent and objective either to extinguish the equity interest of the Estate totally or to

manage the affairs of SFA so that only they and their respective family members could obtain any

financial benefit from the otherwise successful licensing business of SFA for its photography.

198.    Upon information and belief, the Shaw sisters refused to provide any financial information

to the Estate from in or before January 2008 to the present, except for annual K-1 statement that

showed little or no profit, and, David Marcus, Melissa Stevens, and Adelman knew of and both

approved and endorsed this policy of denying the Estate any information about SFA affairs.

199.    Upon information and belief, David Marcus, as counsel, Melissa Stevens as manager, and

Adelman, as outsider retained counsel, knew of and both approved and endorsed the policy and

practice of the Shaw sisters in filing or amending copyright registrations for SFA photographs in

the name of Sam Shaw Inc., as well as the improper payment of copyright royalties to the legal

entity which was formed by the Shaw sisters to implement a fraudulent conveyance of those SFA

copyrights for the clearly unlawful and improper purpose of shielding them from attorney liens.

200.     David Marcus, Melissa Stevens and Adelman (and his law firms) have aided and abetted

the improper and self-interested actions of the Shaw sisters with knowledge of the improper nature

of their conduct, and of the unnecessary adverse financial impact of their conduct of SFA.

201.     SFA and the Estate of Larry Shaw has suffered damages from the self-interested and

unlawful actions of the Shaw sisters, however these claims are asserted as causes of action on

behalf of SFA by the Estate on a shareholder derivative basis, so that any and all damage awards

are to be paid to SFA to enable SFA to reduce the legal fee debts as promptly as possible.

202.     By reason of the foregoing, this Court should enter judgment against David Marcus,

Melissa Stevens, Adelman, and the law firms with which was associated in an amount to be

determined but reasonably believed to exceed $1.5 million, with legal interests and costs.


TENTH CAUSE OF ACTION:   DAMAGES AGAINST ADELMAN, AND HIS LAW FIRMS

FOR AIDING ABETTING THE SHAW FOR NEGLIGENCE AND MALPRACTICE

203.     Plaintiffs repeat and reallege the allegations in the prior paragraphs of this complaint.

204.     As retained counsel representing SFA, Adelman was required by his professional status to

exercise his professional judgment and to provide legal advice in a manner which complied with

the reasonably accepted standards of professional conduct applicable to the legal profession.

205.     As the law firms, with which Adelman was associated while representing SFA, Robinson

Brog and Meister Seelig, at a minimum, were vicariously responsible for the acts of Adelman.

206.     As set forth hereinabove, beginning in or about January 2008, and continuing on an

ongoing basis until the present time, Adelman engaged in a general course of conduct and a

general manner of providing legal advice the Shaw sisters, and nominally to SFA, which departed

34

from such accepted, reasonable and generally accepted professional standards of conduct.

207. Inter alia, as set forth hereinabove, Adelman proposed and implements a transparently fraudulent transfer of the most valuable SFA copyrights – i.e. those involving the photographs of Sam Shaw, particularly those of Marilyn Monroe --- outside the previously claimed and properly noticed ownership of SFA, to a newly formed entity owned solely by the Shaw sisters.

208. As set forth hereinabove, the implementation of this fraudulent conveyance of SFA copyrights was done explicitly – per the declarations of Adelman to the Shaw sisters and others, including David Marcus and Melissa Stevens – for the purpose of defeating the attorney charging lien claims in violation of multiple provisions of the New York Debtor and Creditor.

209. As set forth herein above, Adelman advised and implemented the self-interested and fraudulent scheme and plan of the Shaw sisters to manage and manipulate the handling of the attorney charging lien claims of Tunick and Greenawalt so as to waste vast sums of money from the accounts of SFA to pay unnecessary accruing 24 % interest charges on the Tunick lien claim, and so as to waste vast sums of money in the attempt to extinguish the obviously problematic attorney fee claim of Greenawalt rather than reasonably compromise and pay that fee claim.

210. Upon information and belief, in endorsing and implanting the latter litigation activities, Adelman gave controlling priority to his own financial interests and those of his firm over the financial interests of SFA, and the Estate as shareholder of SFA, which suffered huge losses.

211. Adelman's continuing course of conduct constitutes malpractice and negligence, in that the entire course of conduct departs from reasonably recognized professional standards and fails to satisfy the minimal requirement of being reasonable conduct in relation to SFA's circumstances.

212. Upon information and belief, in so acting as retained counsel, Adelman knew or showed reckless disregard for the fact that he was violating his fiduciary duties to SFA and to the Estate.

35

213.    Upon information and belief, Robinson Brog and Meister Seelig, respectively and independently failed to conform their conduct to accepted standards of professional conduct by failing to supervise or to inquire as to the improper and unlawful legal advice being given by Adelman to SFA and the Shaw sisters, and by failing to restrict or limit Adelman's conduct.

214.    Independently of the liability of these firms for the conduct of Adelman as Adelman gave legal advice and proposed or directed the pursuance of unlawful legal tactics and strategies, the two law firms failed to conform their conduct to accepted professional standards or to act in accordance with a fundamental standard of reasonable conduct by failing to supervise Adelman.

215.    SFA and the Estate have suffered damages as a result of the improper conduct of Adelman directly, individually and for these law firms, and independently by the law firms from their failure to supervise or to inquire as the content and propriety of legal representation given by Adelman; . however these claims against Adelman and the law firms, are asserted herein as causes of action on behalf of SFA by the Estate on a shareholder derivative basis, so that any and all damage awards are to be paid to SFA to enable SFA to reduce the legal fee debts as promptly as possible.

216.    By reason of the foregoing, this Court should enter judgment against Gary Adelman, Robinson Brog, et.al, and Meister Seelig, et ano. Marcus, in an amount to be determined but reasonably believed to exceed $1.5 million, together with legal interests and costs of the action.


ELEVENTH CAUSE OF ACTION:   ALTERNATIVE DIRECT CLAIM FOR DAMAGES SUFFERED BY THE ESTATE ON THE BASIS OF CLAIMS ASSERTED FOR SFA.

217.    Plaintiffs repeat and reallege the allegations in the prior paragraphs of this complaint.

218.    The Estate has been damaged by each and every improper and bad faith action taken by the Shaw sisters, and set forth in the prior shareholder derivative causes of action

36

219.    In the event that either the causes of action seeking to obtain damages and other legal relief

in favor of SFA are not granted or, in the event that the damages awards and other relief may

exceed the amounts require to be paid the two secured attorney charging lien claims of Tunick and

Greenawalt, so that any damages award payable to SFA on a shareholder derivative basis would be

paid unfairly for the benefit of the Shaw sisters, (or the family members who received shares from

the Shaw sisters), the relief sought on a shareholder derivative basis should be awarded directly to

the Estate on such terms, and subject to such accounting or conditions the Court deems proper.

220.    By reason of the foregoing, as and when either of these conditions are met, then the relief

sought primarily in this action for the benefit of SFA should be awarded directly to the Estate.


WHEREFORE, on the causes of action asserted herein on a shareholder derivative basis,

for the benefit of SFA, by the Estate as a shareholder of SFA, or, on the last alternative cause of

action, for the direct benefit of the Estate, judgment should be entered by this Court in favor of

SFA on shareholder derivative basis, and/or for the benefit of the Estate on the last pleaded

alternative cause of action, together with legal interest as prescribed by law and the cost herein.

TOGETHER WITH such other or further relief as the Court deems proper.

Dated:        June 4, 2014

JOSEPH H. ADAMS, ESQ., P.C.
Attorney for the Estate of Larry Shaw
76 Burd Street, Nyack NY 10960
845 353 2320; 845 353 6934 - fax
joelawesq@gmail.com


TO:    All counsel of record

37

VERIFICATION:


STATE OF NEW YORK

COUNTY OF ROCKLAND:  ss


SUSAN SHAW, being duly sworn, deposes and says:


I am the executor of the Estate of Larry Shaw, the primary plaintiff in this action, although I am also named as a plaintiff in my role as the executor of that estate.


I have read the attached complaint, and I know the contents of the complaint, which are true based on my personal knowledge, my general knowledge of the affairs of Shaw Family Archives, Ltd, and its creation; to the extent that allegations in the complaint are made on information and belief, I believe them to be true, based on what I do know.


Susan Shaw


Sworn to before me this 4th day of

June, 2014

NOTARY PUBLIC

Joseph H. Adams
Notary Public, State of New York
No. 02AD4672663
Qualified in Rockland County
Commission Expires 5/10/ 2015