UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
THE ESTATE OF LARRY SHAW, AND SUSAN SHAW,
AS THE EXECUTOR OF THE ESTATE OF LARRY
SHAW, asserting claims on behalf of a New York Corporation,
SHAW FAMILY ARCHIVES, LTD., ON A SHAREHOLDER
DERIVATIVE BASIS, and/or, when so pleaded, asserting
INDIVIDUAL CLAIMS FOR THE BENEFIT OF THE
ESTATE OF LARRY SHAW,

                    Plaintiffs,

       -against-

EDIE SHAW MARCUS aka EDITH SHAW MARCUS,
META SHAW STEVENS, DAVID MARCUS, MELISSA
STEVENS, GARY ADELMAN, ESQ., and SAM SHAW INC.,

                    Defendants,

And SHAW FAMILY ARCHIVES, LTD.,

                 As a Nominal Party to the Action.
-----------------------------------------------------------------------X
SAM SHAW, INC., META STEVENS, EDITH MARCUS,
MELISSA STEVENS, DAVID MARCUS and MELISSA
STEVENS and DAVID MARCUS, on behalf of and in their
capacity as shareholders of SHAW FAMILY ARCHIVES,
LTD. on a derivative basis,

                    Plaintiffs,

       -against-

THE ESTATE OF LARRY SHAW, SUSAN SHAW and
JAKOB SHAW,

                    Defendants,

SHAW FAMILY ARCHIVES, LTD.,

                 As a Nominal Defendant.
-----------------------------------------------------------------------X

**OPINION AND ORDER**

14 Civ. 3849 (NSR)(JCM)
(Action 1)

14 Civ. 5653 (NSR)(JCM)
(Action 2)

-1-

With this Order, the Court addresses a pattern of delinquent conduct by Joseph H. Adams ("Mr. Adams"), former counsel to Plaintiffs Estate of Larry Shaw and Susan Shaw (jointly "Plaintiff"), in connection with his complete disregard for the Court's Orders and lack of respect for the Court and opposing counsel.[1]

On May 2, 2016, Defendants in Action 1, Sam Shaw, Inc., Meta Stevens, Edith Marcus, Melissa Stevens and David Marcus, Esq. (the "Shaw Family") filed a letter motion for sanctions relating to Plaintiff's failure to comply with the Court's Discovery Orders, and for cost-shifting relating to the forensic review of Plaintiff Susan Shaw's laptop computer (the "Sanctions Motion"). (Docket No.[2] 275).  Plaintiff filed its opposition on May 23, 2016 and May 24, 2016. (Docket Nos. 300, 301).

The Shaw Family filed a second motion for sanctions (the "Omnibus Sanctions Motion") on June 13, 2016. (Docket Nos. 327, 328, 329)  On August 12, 2016 and August 19, 2016, Plaintiff filed incomplete versions of its opposition to the Omnibus Sanctions Motion on this Court's Electronic Case Filing ("ECF") system, and served the Court with a courtesy copy of one of the versions of these submissions. (Docket Nos. 370, 377).  The Court continued to receive letters from Plaintiff seeking extensions of time to file the complete and corrected opposition, with certain exhibits filed under seal. (Docket Nos. 374, 378).  On August 22, 2016, Plaintiff

---

[1] The Court notes that this is not the first instance in which it has addressed Mr. Adams' professional misconduct. On April 8, 2016, this Court scheduled an in-person status conference for May 12, 2016 at 10:00 a.m. (the "Conference") at which counsel for all parties were required to appear.  Mr. Adams did not appear at the Conference, nor did he contact the Court to request an adjournment or otherwise notify the Court of an inability to attend the Conference.  Thereafter, the Court ordered Mr. Adams to submit a letter to the Court by close of business on May 13, 2016, explaining his failure to appear at the Court-ordered Conference and why the Court should not order him to pay opposing counsel's costs.  Mr. Adams again failed to comply with the Court's Order.  Accordingly, by Order dated June 6, 2016, the undersigned sanctioned Mr. Adams and ordered that he pay for associated expenditures incurred by Defendants Sam Shaw, Inc., Meta Stevens, Edith Marcus, Melissa Stevens and David Marcus, Esq. (the "Shaw Family") and Defendant Jakob Shaw. (Docket No. 321).  While the Shaw Family raises this misconduct again in the submissions presently before the Court, the Court deems that issue fully settled and, therefore, will not address it here.

[2] Unless otherwise noted, refers to the docket of Action 1, 14 Civ. 3849 (NSR)(JCM).

filed the final version of its opposition to the Omnibus Sanctions Motion, with Exhibits I, J, and K filed under seal, and served the Court with a courtesy copy of the submission. (Docket No. 380). Plaintiff's earlier submissions in opposition to the Omnibus Sanctions Motion, (Docket Nos. 370, 377), were subsequently marked deficient by the Clerk's Office. Accordingly, on September 20, 2016 the Court returned the courtesy copy of those deficient submissions to counsel for Plaintiff. The Court has retained the courtesy copy of Docket No. 380, as well as the Shaw Family's reply, (Docket Nos. 382, 383), and has deemed the motion fully submitted.[3]

For the reasons set forth below, the Sanctions Motion and the Omnibus Sanctions Motion are granted in part and denied in part.

## I. BASES FOR SANCTIONS

By way of their Sanctions Motion and Omnibus Sanctions Motion, the Shaw Family argues that the Court should impose sanctions as follows: (i) Plaintiff and Mr. Adams should bear the costs relating to the Shaw Family's forensic review of Susan Shaw's laptop computer (the "Computer"); (ii) Plaintiff's and Mr. Adams' conduct requires monetary sanctions and the dismissal of Plaintiff's Second Amended Complaint (the "Complaint") and Plaintiff's Answer to the Shaw Family's Amended Complaint (the "Answer") pursuant to Federal Rules of Civil Procedure Rule 16(f) ("Rule 16"); (iii) Plaintiff's and Mr. Adams' failure to comply with the Court's Discovery Orders require monetary sanctions and dismissal of the Complaint and the Answer pursuant to Federal Rules of Civil Procedure Rule 37 ("Rule 37"); (iv) Plaintiff's and Mr. Adams' conduct warrants sanctions pursuant to the Court's inherent power; (v) Mr. Adams'

---

[3] I agree with the Second Circuit that "one of the most difficult and unenviable tasks" for a judge is determining whether sanctions should be imposed, *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 341 (2d Cir. 1999), especially since sanctions motions are often brought only after the parties' relationship has deteriorated greatly and are, thus, fraught with emotion.

conduct warrants sanctions pursuant to 28 U.S.C. § 1927; and (vi) the Court should report Mr. Adams' conduct to the grievance committee.

The Shaw Family bases its request for sanctions on the following instances of misconduct,[4] which occurred throughout the pendency of this case and over the course of nine discovery conferences before the undersigned, often ranging from two to three hours each: (i) Mr. Adams and Plaintiff Susan Shaw failed to preserve relevant material on the Computer, which now requires a forensic examination; (ii) Mr. Adams failed to comply with Court Orders relating to the production of the Computer; (iii) Mr. Adams failed to comply with the Court's April 15, 2015, December 23, 2015, April 19, 2016, May 19, 2016, and July 28, 2016 Discovery Orders; (iv) Mr. Adams invited a third party to eavesdrop on the January 7, 2016 telephonic meet-and-confer, which included sensitive and confidential information; and (v) Mr. Adams behaved unprofessionally and disrespected opposing counsel and the Court at hearings before the undersigned.

## II. APPLICABLE LAW

### A. Cost-Shifting Pursuant to *Zubulake*

Rule 26(b) of the Federal Rules of Civil Procedure states that parties may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party," except where, *inter alia*, "the burden or expense of the proposed discovery outweighs its

---

[4] The Court's review of both parties' submissions, (Docket Nos. 275, 300, 301, 327, 328, 370, 374, 377, 378, 380, 382, 383), makes clear that counsel's relationship deteriorated and resulted in papers rife with emotion, frustration and, much to the Court's chagrin, lack of focus. In light of this, the Court has narrowed its analysis solely to the conduct that, in its view, warrants sanctions. Additionally, the Court will not opine on the Shaw Family's claims relating to the Deriaz issue in this decision, as separate motions have been submitted on that issue and are currently *sub judice*. In a similar vein, the Court notes its dismay with the unfinished quality of Mr. Adams' submission, (Docket No. 380), which Mr. Adams forewarns was filed "subject a [sic] final edit or modification of the declaration, or its modification to made [sic] needed changes or to correct errors or missing facts," (*id.* at ¶ 282). In fact, Mr. Adams' declaration contains a litany of errors, unfinished and incomprehensible sentences and sporadic blank spaces that were presumably meant to be filled in prior to filing. (*See, e.g., id.* at ¶¶ 39, 54, 118, 129). Accordingly, the Court construes the contents of this submission to the best of its ability.

likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b).

There is a presumption that "the responding party must bear the expense of complying with discovery requests." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978). However, pursuant to the Federal Rules of Civil Procedure Rule 26(c) ("Rule 26(c)"), a district court may issue an order protecting the responding party from undue burden or expense by "conditioning discovery on the requesting party's payment of the costs of discovery." *Oppenheimer*, 437 U.S. at 358; *see Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 283 (S.D.N.Y. 2003) ("*Zubulake III*").[5]  Such an order may be granted only on the motion of the responding party and "for good cause shown." Fed. R. Civ. P. 26(c).  Further, "the responding party has the burden of proof on a motion for cost-shifting." *Zubulake III*, 216 F.R.D. at 283.

In *Zubulake v. UBS Warburg LLC*, the court set forth an analytical framework for determining whether it is appropriate to shift the costs of electronic discovery. 217 F.R.D. 309, 322 (S.D.N.Y. 2003) ("*Zubulake I*").  In that case, the plaintiff claimed that key evidence was located in e-mails that were contained only in backup tapes and sought an order compelling the defendant, UBS Warburg LLC ("UBS"), to produce the e-mails at its own expense. *Id.* at 311-312.  After UBS was ordered to produce the e-mails, the *Zubulake I* court considered whether cost-shifting was appropriate. *Id.* at 317.

As an initial matter, the *Zubulake I* court stated that "cost-shifting should be considered only when electronic discovery imposes an 'undue burden or expense' on the responding party."

---

[5] *Zubulake III* was the third of five pre-trial decisions issued in *Zubulake v. UBS Warburg LLC*.  The decisions are commonly referred to as *Zubulake I*, *Zubulake II*, *Zubulake III*, *Zubulake IV* and *Zubulake V*.  Both *Zubulake I* and *Zubulake III* are cited and referenced herein.

*Id.* at 318 (emphasis omitted) (quoting Fed. R. Civ. P. 26(c)). "[W]hether production of documents is unduly burdensome or expensive turns primarily on whether it is kept in an accessible or inaccessible format (a distinction that corresponds closely to the expense of production)." *Id.* at 318 (emphasis omitted). "Accessible" data is stored in a readily usable format that "does not need to be restored or otherwise manipulated to be usable." *Id.* at 320. On the other hand, data that is "inaccessible" is not readily usable and must be restored to an accessible state before the data is usable. *Id.* at 320.

If the responding party is producing data from inaccessible sources, the *Zubulake I* court identified seven factors to be considered in determining whether shifting the cost of production is appropriate: (i) the extent to which the request is specifically tailored to discover relevant information; (ii) the availability of such information from other sources; (iii) the total costs of production, compared to the amount in controversy; (iv) the total costs of production, compared to the resources available to each party; (v) the relative ability of each party to control costs and its incentive to do so; (vi) the importance of the issues at stake in the litigation; and (vii) the relative benefits to the parties of obtaining the information. *Id.* at 322. The *Zubulake I* court weighed the factors, with the first being the most important consideration and the seventh being the least. *Id.* at 323.

## B.  Sanctions Pursuant to Rule 16

Rule 16 authorizes a court to order sanctions if an attorney "fails to appear at a scheduling or other pretrial conference" or "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1). Specifically, it provides that the court "must order the [violating] party, its attorney, or both to pay reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other

circumstances make an award unjust." Fed. R. Civ. P. 16(f)(2).  "In deciding whether a sanction is merited, the court need not find that a party acted in bad faith. The fact that a pretrial order was violated is sufficient to allow some sanction." Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, 6A Federal Practice and Procedure § 1531 (3d ed. 2010) (footnote omitted).  The imposition of sanctions pursuant to Rule 16 is within the sound discretion of the court. *See Neufeld v. Neufeld*, 172 F.R.D. 115, 118 (S.D.N.Y. 1997); *Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D. 363, 366-367 (E.D.N.Y. 2013).  The sanctions provided by Rule 16(f) are the same as those provided by Rule 37(b)(2)(B), (C) and (D). *See Burgie v. Euro Brokers, Inc.*, No. 05 Civ. 968 (CPS)(KAM), 2006 WL 845400, at *10 (E.D.N.Y. Mar. 30, 2006).  In determining whether sanctions pursuant to Rule 16(f) are appropriate, courts apply the same standards developed with respect to Rule 37(b)(2) sanctions. *See* Fed. R. Civ. P. 16 Advisory Committee Notes, 1983 Amendment ("Rule 16(f) incorporates portions of Rule 37(b)(2), which prescribes sanctions for failing to make discovery. This should facilitate application of Rule 16(f), since courts and lawyers already are familiar with the Rule 37 standards."); *see also infra* Part II.C.

Pursuant to Rule 16(f)(2), both a party and its counsel may be held liable for the expenses, including attorneys' fees and costs, resulting from the violation of either a scheduling order or Rule 26(a).  Rule 16(f)(2) mandates the award of attorneys' fees for an unjustified violation of a scheduling or pretrial order: "[i]nstead of or in addition to any other sanction, the court *must* order the [violating] party, its attorney, or both to pay the reasonable expenses— including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2) (emphasis added).  Rule 16(f) also authorizes the Court to

impose sanctions such as striking a party's pleadings.  *See N. Am. Karaoke-Works Trade Ass'n, Inc. v. Entral Grp. Int'l, LLC*, No. 06 Civ. 5158 (LTS)(MHD), 2007 WL 844689, at *3 (S.D.N.Y. Mar. 16, 2007).

## C.  Sanctions Pursuant to Rule 37

Rule 37 sets forth the Court's procedures for enforcing discovery and sanctioning misconduct.  Where "a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). Such orders may include: (i) directing that matters in the litigation be taken as established by the prevailing party; (ii) prohibiting the sanctioned party from supporting or opposing claims or defenses or from introducing evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding; (vi) entering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination. Fed. R. Civ. P. 37(b)(2)(A); *see also Daval Steel Products, a Division of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991) ("When a party seeks to frustrate [discovery] by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate.").  Reasonable expenses, including attorneys' fees, also may be awarded against the party and/or the attorney failing to act, unless a court finds that the failure "was substantially justified, or that other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Numerous factors are relevant to a district court's exercise of its broad discretion to order sanctions under Rule 37, including: (i) the willfulness of the non-compliant party or the reason for the noncompliance; (ii) the efficacy of lesser sanctions; (iii) the duration of the period of

noncompliance; and (iv) whether the non-compliant party had been warned of the consequences of his non-compliance. *See Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 852-54 (2d Cir. 1995). In addition, an award of sanctions under Rule 37 should effectuate its three purposes: (i) obtaining compliance with discovery orders; (ii) ensuring the disobedient party does not benefit from non-compliance; and (iii) providing a general deterrent in the particular case and litigation in general. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976); *International Mining Co., Inc. v. Allen & Co., Inc.*, 567 F.Supp. 777, 788 (S.D.N.Y. 1983). A court may consider the full record in the case in order to select the appropriate sanction. *See Diapulse Corp. of America v. Curtis Pub. Co.*, 374 F.2d 442, 447 (2d Cir. 1967).

The sanctions of striking pleadings and dismissal are the most extreme sanctions available. *See National Hockey League*, 427 U.S. at 643. Dismissal is appropriate "only where the noncompliance is due to willfulness, bad faith, fault or gross negligence rather than inability to comply or mere oversight." *Hochberg v. Howlett*, No. 92 Civ. 1822, 1994 WL 174337, at *3 (S.D.N.Y. May 3, 1994) (citing *Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212 (1958) and *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979)). Non-compliance may be deemed willful "when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control." *Abreu v. City of N.Y.*, 208 F.R.D. 526, 530 (S.D.N.Y. 2002). In addition, "a party's persistent refusal to comply with a discovery order" presents sufficient evidence of willfulness, bad faith or fault. *See, e.g., Monaghan v. SZS 33 Associates, L.P.*, 148 F.R.D. 500, 509 (S.D.N.Y. 1993).

### D. Sanctions Pursuant to 28 U.S.C. § 1927

Another vehicle by which a court may issue sanctions is Section 1927 of Title 28 of the United States Code ("28 U.S.C. § 1927" or "§ 1927").  28 U.S.C. § 1927 authorizes the courts to sanction an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927.  To impose sanctions under § 1927, the court must make a finding of "conduct constituting or akin to bad faith." *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000) (citation and internal quotation marks omitted); *see United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991) ("Bad faith is the touchstone of an award under this statute."); *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000) ("[A]n award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.").  "Unlike [other] sanctions which focus on particular papers, the inquiry under § 1927 is on a course of conduct." *Bowler v. U.S. Immigration & Naturalization Serv.*, 901 F.Supp. 597, 605 (S.D.N.Y. 1995).

### E. Sanctions Pursuant to the Court's Inherent Authority

Courts also possess the "inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Revson*, 221 F.3d at 78 (internal quotation marks omitted) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).  However, "when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the [Federal Rules of Civil Procedure or a specific statute], the court ordinarily should rely on the Rules rather than the inherent power." *Chambers*, 501 U.S. at 50; *see also Mathias v. Jacobs*, 167 F.Supp.2d 606, 623 (S.D.N.Y. 2001) ("Even if the Federal Rules or a statute provides an

adequate basis for imposing sanctions, a court still may resort to its inherent power as the source

of the sanctions, but the Supreme Court has expressed a preference for the imposition of

sanctions under the Federal Rules, when possible."). Furthermore, "because the inherent power

is considered so potent, courts must be restrained in exercising it." *Mathias*, 167 F.Supp.2d at

623.

## III.  THE SANCTIONS MOTION

The Shaw Family argues that the cost associated with the forensic examination of the

Computer, which contains material relevant to this litigation, should be shifted to Plaintiff and/or

Mr. Adams. (Docket No. 275 at 1-3).  The Shaw Family further contends that Mr. Adams should

be sanctioned for failing to comply with Court Orders relating to the production of the Computer.

(*Id.* at 3-6).

### A.  Cost-Shifting for the Forensic Examination of the Computer

The Shaw Family contends that, pursuant to the framework set forth in *Zubulake I, see*

*supra* Part II.A, the costs it will incur in examining the Computer should be shifted to Plaintiff

and/or Mr. Adams. (Docket No. 275 at 1-3).  The Court finds that a portion of the forensic

examination cost, which is designed to yield the discovery of inaccessible electronically stored

information,[6] should be shifted to Plaintiff.[7]

With respect to the first *Zubulake I* consideration, the request was narrowly tailored to

seek relevant e-mails contained on the Computer that demonstrate that Susan Shaw was not shut

---

[6] As a preliminary matter, the Court finds that cost-shifting is appropriate because the electronically stored
information in question here, the contents of the Computer that require forensic recovery, satisfies the "inaccessible
format" predicate set forth in *Zubulake I.* 217 F.R.D. at 319-320 (noting that "erased, fragmented, or damaged data"
must be reconstructed before being usable and is therefore considered inaccessible).

[7] The Court finds that it is appropriate for Plaintiff Susan Shaw alone to bear the burden of the cost-shifting.  Despite
Mr. Adams' repeated misconduct, the Court cannot conclude that Mr. Adams participated in the disposal of the
Computer.  Further, Mr. Adams confirms that it was Plaintiff Susan Shaw who "shut [sic] her mouth off in court and
stated she refused to release her laptop." (Docket No. 380 at ¶ 130).

out of the Shaw Family Archives, Ltd. ("SFA") governance and go to the claims against Plaintiff for self-dealing, interference with SFA and copyright infringement. (Docket No. 275-2).  In fact, this Court ordered the production of the Computer given that it was alleged to contain relevant material. (Docket No. 262).  This factor weighs in favor of cost-shifting.  The second *Zubulake I* factor also weighs in favor of cost-shifting, as the Shaw Family had no means of accessing this information other than by way of the forensic examination.  Further to this point, Mr. Adams admitted that his client discarded one computer and the other crashed, and none of the e-mails were saved even when litigation was anticipated. (Docket No. 222 at 11-12).  Third, the total cost of the forensic examination is likely to be far less than the total amount in controversy.  This weighs in favor of cost-shifting.  The fourth factor is neutral, given that the parties' financial positions are not fully apparent.  Fifth, given Mr. Adams' repeated discovery-related misconduct, the Shaw Family was the appropriate party to coordinate the discovery and control costs.  This weighs in favor of cost-shifting.  The sixth issue, the importance and novelty of the issues in this case, is neutral.  Seventh, the e-mails contained on the Computer are important to the informed litigation of this case and essential to both parties' claims.  Thus, this factor is neutral.

Given that a majority of the factors, including the first two -- and most important -- considerations, weigh in favor of the Shaw Family's claims, the Court finds that cost-shifting is appropriate.  "It is beyond cavil that the precise allocation [of how much of the cost should be shifted] is a matter of judgment and fairness rather than a mathematical consequence of the seven factors discussed above.  Nonetheless, the analysis of those factors does inform the exercise of discretion." *Zubulake III*, 216 F.R.D. at 289.  Since a majority of the factors weigh in favor of shifting the cost onto Plaintiff, the Court orders that Plaintiff pay for seventy percent of the forensic examination costs and that the Shaw Family pay for thirty percent. *See id.* (holding that,

based on the outcome of the seven-factor analysis, it was appropriate to shift twenty-five percent of the discovery cost onto the plaintiff and assign the remainder to the defendant). "As a general rule, where cost-shifting is appropriate, only the costs of restoration and searching should be shifted." *Id.* at 290. Thus, Plaintiff's seventy-percent share only includes costs for restoration and searching, and not, as the Shaw Family requests, any expenses incurred in the course of review. (Docket No. 275 at 1); *Zubulake III*, 216 F.R.D. at 290 ("the responding party should *always* bear the cost of reviewing and producing electronic data once it has been converted to an accessible form") (emphasis in original).

## B. Monetary Sanctions for Violation of Orders Relating to the Discovery of the Computer

The Shaw Family requests attorneys' fees for the time its counsel expended in compelling Mr. Adams' compliance with the Court's Orders to turn over the Computer. (Docket No. 275 at 3-5).

Rule 37 provides that if a motion to compel is granted, "or if the disclosure or requested discovery is provided after the motion was filed—the court *must* . . . award reasonable motion expenses incurred in making the motion." Fed. R. Civ. P. 37(a)(5)(A) (emphasis added). Thus, the Rule sets forth a rebuttable presumption in favor of awarding sanctions against a party that complies with discovery demands after the filing of a motion to compel. *See* 7 James Wm. Moore, *Moore's Federal Practice*, § 37.23 at 37-41 (3d ed. 2008). The Court may not award reasonable expenses, however, if the nondisclosure was "substantially justified" or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii).

Whether a party was substantially justified in resisting discovery is determined by "an objective standard of reasonableness and does not require that he acted in good faith." *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 262 (S.D.N.Y. 1995) (citing *Pierce v.*

*Underwood*, 487 U.S. 552, 565 (1988)).  Instead, conduct is substantially justified if there was a "genuine dispute" or if "reasonable people could differ" as to the appropriateness of the contested action. *See, e.g.*, *Comprehensive Habilitation Servs. v. Commerce Funding Corp.*, 240 F.R.D. 78, 87 (S.D.N.Y. 2006) (denying sanctions motion where opposing party raised valid relevancy objections to document requests).  Plaintiff's actions here fail to satisfy this standard. Mr. Adams ignored repeated Court Orders to produce the Computer despite the undersigned's numerous admonitions, and thus cannot establish that the nondisclosure was substantially justified.

Accordingly, the Court agrees that, pursuant to Rule 37(a)(5)(A), Mr. Adams is required to pay attorneys' fees in connection with the Shaw Family's oral motion on April 8, 2016; the letter dated April 15, 2016, (Docket No. 254); and the letter dated April 18, 2016, (Docket No. 260), that were granted and resulted in the Court's April 19, 2016 Order, (Docket No. 262), compelling the production of the Computer.

## IV.  THE OMNIBUS SANCTIONS MOTION

In its Omnibus Sanctions Motion, the Shaw Family requests that the Court impose sanctions on the following five grounds: (i) Plaintiff's and Mr. Adams' conduct requires monetary sanctions and the dismissal of the Complaint and the Answer pursuant to Rule 16; (ii) Plaintiff's and Mr. Adams' failure to comply with the Court's Discovery Orders require monetary sanctions and dismissal of the Complaint and the Answer pursuant to Rule 37; (iii) Plaintiff's and Mr. Adams' conduct warrants sanctions pursuant to the Court's inherent power; (iv) Mr. Adams' conduct warrants sanctions pursuant to 28 U.S.C. § 1927; and (v) the Court should report Mr. Adams' conduct to the grievance committee.  As discussed above, *see supra* n.4, due in part to the parties' verbose and unfocused submissions, the Court only analyzes the

following specific instances of misconduct that it deems worthy of note and sanctionable: (i) Mr.

Adams' failure to comply with the Court's April 15, 2015, December 23, 2015, February 29,

2016, April 19, 2016, May 19, 2016, and July 28, 2016 Orders; (ii) Mr. Adams' invitation to a

third party to surreptitiously sit in on the January 7, 2016 telephonic meet-and-confer, which

included sensitive and confidential discussions; and (iii) Mr. Adams' systematic misconduct at

various hearings before the undersigned.

**A. Monetary Sanctions Pursuant to Rules 16, 37 and 28 U.S.C. § 1927**

Rules 16, 37 and 28 U.S.C. § 1927 enable, but do not require, this Court to impose

sanctions. *See National Hockey League v. Metropolitan Hockey Club Inc.*, 427 U.S. 639, 642

(1976) (per curiam); *Luft v. Crown Publishers Inc.*, 906 F.2d 862, 865 (2d Cir. 1990);

*Salahuddin v. Harris*, 782 F.2d 1127, 1133 (2d Cir. 1986); *Machleder v. Diaz*, 618 F.Supp. 1367,

1377 (S.D.N.Y. 1985) *modified on other grounds,* 801 F.2d 46 (2d Cir. 1986) *cert. denied,* 479

U.S. 1088.  A review of the record and Mr. Adams' conduct before this Court, however, leaves

no doubt that Mr. Adams' violations of Rules 16, 37 and 28 U.S.C. § 1927 warrant sanctions.

**i. Discovery Order Violations**

On February 29, 2016, after hearing oral argument from the parties, the Court entered an

Order directing Mr. Adams to, *inter alia*, Bates stamp his document production; produce

responsive documents requested in the Shaw Family's Second Document Requests dated January

6, 2016; and respond to the Second Set of Interrogatories dated January 4, 2016. (Docket No.

230).  Mr. Adams systematically violated this Order, in defiance of this Court's repeated

admonitions directing him to comply, which resulted in delayed discovery, a protracted

subsequent Court appearance on April 8, 2016 and needless additional legal fees. (*See, e.g.*,

Docket No. 329-3 at 38-50).  This is a clear violation of Rule 37 for which Mr. Adams has not

demonstrated any substantial justification.[8] *See John B. Hall, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1177 (2d Cir. 1988) ("Rule 37(b)(2) mandates" the award of attorneys' fees unless disobedient party's action was substantially justified); *Intertec Contracting v. Turner Steiner Int'l, S.A.*, 98 Civ. 9116, 2001 WL 812224 at *11 (S.D.N.Y. July 18, 2001) ("[F]ailure to comply with discovery orders justly allows the court to impose costs upon the failing party . . . The Second Circuit has repeatedly stated the importance of following discovery orders of the Court, warning that '[a] party who flouts such orders does so at his peril.'"). Accordingly, Mr. Adams is directed to pay for the costs associated with the Shaw Family's counsel's preparation for and attendance at the April 8, 2016 conference.

As discussed *supra*, the Court issued Discovery Orders dated April 15, 2015, April 19, 2016, and May 19, 2016 setting forth correspondence page limits, an Order dated December 23, 2015 directing Mr. Adams to temporarily suspend his correspondence to the Court, and another dated July 28, 2016 ordering Mr. Adams to, *inter alia*, comply with previous discovery directives. (Docket Nos. 101, 185, 261, 296, 361). Mr. Adams systematically violated each of these Orders and directives, (*see, e.g.*, Docket Nos. 167, 176, 187, 187-5, 199, 274, 292, 326, 287), which resulted in protracted conferences before the undersigned on January 11, 2016,

---

[8] Mr. Adams admitted that, in fact, he did not read the Court's February 29, 2016 Order in full. (Docket No. 380 at ¶ 162, n.61). The Court reminded Mr. Adams that neither this, nor his purported lack of familiarity with ECF, is a valid excuse for violating a Court Order. Similarly, at various points throughout this litigation, Mr. Adams has argued that his poor health should be a basis for the Court to excuse his egregious conduct. (*See, e.g.*, Docket No. 275 at 4). However, Mr. Adams does not specifically mention his ill health in opposition to the sanctions motions and offers no supporting evidence of his ailments. To the extent Mr. Adams has made verbal claims of ill health, that is insufficient to raise a colorable defense. *See Burgie v. Euro Brokers, Inc.*, No. 05 Civ. 968 (CPS)(KAM), 2006 WL 845400, at *12 (E.D.N.Y. Mar. 30, 2006), *aff'd*, No. 05 Civ. 0968 (CPS), 2007 WL 1704178 (E.D.N.Y. June 12, 2007) ("The illness of a person subject to sanctions may be considered in deciding whether and what type of sanctions may be imposed, upon a proffer of the nature of the illness and its impact on one's ability to comply with the Court's orders, and supporting evidence such as a sworn statement or other medical documentation to support the claim of illness."); *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 851-852 (2d Cir. 1995) (default judgment warranted where magistrate judge determined that "defendants had engaged in a pattern of 'tactical obstruction,'" throughout the discovery process and had failed to proffer any documentary evidence in support of their claim that defendant was "stricken with a 'grave illness.'").

(Docket No. 329-4 at 9), and May 19, 2016, (Docket No. 329-5 at 37, 58, 76-77, 80).[9] Specifically, despite the clear directives in the December 23, 2015 Order, for example, Mr. Adams continued to barrage the Court with his correspondence, including two letters on January 5, 2016. (Docket Nos. 187, 187-5). Thereafter, at the January 11, 2016 conference, the undersigned repeated the Court's admonition to Mr. Adams that he was "violating [the Court's] rules" by, *inter alia*, attaching letters as exhibits to letters and refusing to request page extensions, as required by the Court. (Docket No. 329-4 at 9). Further, in defiance of the directives set forth in the April 15, 2015, April 19, 2016, and May 19, 2016 Orders, Mr. Adams continued to exceed the compulsory pages limits. (*See, e.g.*, Docket Nos. 167, 176, 199, 274, 292, 326). This pattern of violative conduct warrants sanctions pursuant to Rule 16. *See Emanuel v. Griffin*, No. 13 Civ. 1806 (JMF), 2015 WL 1379007, at *17 (S.D.N.Y. Mar. 25, 2015), *appeal dismissed* (May 19, 2015) (noting that sanctions under Rule 16(f) were appropriate where plaintiff's counsel intentionally exceeded mandatory page limits set forth by the court); *Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D. 363, 371 (E.D.N.Y. 2013) ("A court may . . . award attorney's fees when sanctioning a party under Fed. R. Civ. P. 16(f), though only for reasonable expenses incurred because of noncompliance with this rule."); *Uretsky v. Acme Am. Repairs*, 07 Civ. 4688 (DLI)(SMG), 2011 WL 1131326, at *1 (E.D.N.Y. Mar. 28, 2011) ("Attorney's fees awarded [pursuant to Rule 16] must be related to the expenses incurred as a result of the sanctioned misconduct.").

Accordingly, Mr. Adams is directed to pay the Shaw Family's attorneys' fees in connection with the January 11, 2016 conference, (Docket No. 329-4), in addition to the Shaw

---

[9] *See also infra* Part IV.A.ii.

Family's counsel's time spent reviewing and responding to his two explicitly unauthorized letters filed January 5, 2016, (Docket Nos. 187, 187-5).

### ii. Improper Conduct at the January 7, 2016 Meet-and-Confer

Next, the Court finds that Mr. Adams should be sanctioned pursuant to 28 U.S.C. §1927 for inviting a third party to surreptitiously listen to the January 7, 2016 meet-and-confer, which included sensitive and confidential information. (Docket No. 329 at 35-36). In a bizarre effort to relay the tone of the parties' meet-and-confers to this Court, Mr. Adams invited a local merchant, Seth Gopin ("Mr. Gopin"), to eavesdrop on the telephonic meet-and-confer, without informing opposing counsel. Subsequently, Mr. Gopin submitted an affidavit to the Court confirming his clandestine presence at the meet-and-confer.[10] (Docket No. 329-22 at 5). The Court finds that such conduct is sanctionable pursuant to 28 U.S.C. § 1927, as it "multiplie[d] the proceedings . . . unreasonably and vexatiously." *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (quoting 28 U.S.C. § 1927). As a result of this conduct, the Court and the parties expended otherwise unnecessary time and effort reviewing the impropriety of this behavior at the May 19, 2016 conference. (*See, e.g.*, Docket No. 329-5 at 26-30). Further, Mr. Adams' bad faith is clear and egregious, since his actions were "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose . . . ." *Schlaifer*, 194 F.3d at 336 (internal quotations and citations omitted); *Brignoli v. Balch, Hardy & Scheinman, Inc.*, 126 F.R.D. 462, 466 (S.D.N.Y. 1989) (holding that an attorney's misconduct during depositions, which was "of an egregious nature, stamped by bad faith . . . ," resulted in

---

[10] The Shaw Family's counsel had hired a stenographer to record their meet-and-confers with Mr. Adams to ensure an accurate transcription was made since Mr. Adams denied that certain issues had been discussed or agreed upon at prior meet-and-confers. At the beginning of the January 7, 2016 telephonic meet-and-confer, all parties on the line identified themselves. However, Mr. Adams never indicated that Mr. Gopin was present, nor did Mr. Gopin identify himself. (Docket No. 329-22 at 5).

otherwise unnecessary litigation and was therefore sanctionable pursuant to 28 U.S.C. § 1927);

*Bowler*, 901 F.Supp. at 605.

Accordingly, the Court orders Mr. Adams to pay for the Shaw Family's counsel's fees in preparing for and attending the May 19, 2016 conference, at which the Court and counsel expended unnecessary time and effort discussing the impropriety of Mr. Adams' actions. (Docket No. 329-5 at 26-30).

### iii. Attorneys' Fees Associated with the Sanctions Motion and Omnibus Sanctions Motion

The Court also finds that, pursuant to Rule 16, Mr. Adams must compensate the Shaw Family for attorneys' fees and costs associated with bringing the Sanctions Motion and the Omnibus Sanctions Motion. *See* Fed. R. Civ. P. 16(f)(2); *see also Emanuel v. Griffin*, No. 13 Civ. 1806 (JMF), 2015 WL 1379007, at *18 (S.D.N.Y. Mar. 25, 2015), *appeal dismissed* (May 19, 2015) (ordering plaintiff's counsel, who was sanctioned for "continued failure to abide by the Court's rules and orders," to compensate opposing counsel pursuant to Fed. R. Civ. P 16(f) for fees and costs associated with bringing the motion); *Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D. 363, 371 (E.D.N.Y. 2013) ("A court may . . . award attorney's fees when sanctioning a party under Fed. R. Civ. P. 16(f), though only for reasonable expenses incurred because of noncompliance with this rule."); *Uretsky v. Acme Am. Repairs*, No. 07 Civ. 4688 (DLI)(SMG), 2011 WL 1131326, at *1 (E.D.N.Y. Mar. 28, 2011) ("Attorney's fees awarded [pursuant to Rule 16] must be related to the expenses incurred as a result of the sanctioned misconduct.").

### B. Striking Pleadings Pursuant to Rules 16 and 37

The Shaw Family requests that, as a result of Mr. Adams' pattern of sanctionable conduct, the Court should impose the drastic remedy of striking his client's pleadings. (Docket

No. 328 at 11, 16). Specifically, the Shaw Family contends that it would be proper for the Court to strike the Complaint and the Answer pursuant to Rules 16 and 37. (*Id.*). I disagree.

Dismissal of pleadings is considered an "extreme sanction[], to be deployed only in rare situations." *Cine Forty-Second Street*, 602 F.2d at 1063-64 (2d Cir. 1979). Using its broad discretion, the Court does not consider Mr. Adams' conduct of the type that would warrant dismissal of his client's Complaint and Answer. *See Fonar Corp. v. Magnetic Plus, Inc.*, 175 F.R.D. 53, 56 (S.D.N.Y. 1997) (holding that the sanction of dismissing a pleading under Rules 16 and 37 was "unduly harsh"); *Airlines Reporting Corp. v. Grecian Travel, Inc.*, 170 F.R.D. 351, 354 (E.D.N.Y. 1995) (rejecting the imposition of sanctions to dismiss a pleading where, in the court's discretion, the attorney's behavior did not rise to a level warranting such an extreme remedy). Further, Mr. Adams has been relieved as counsel and new attorneys have been retained to prosecute this case. Accordingly, using the broad discretion afforded to it, the Court declines to recommend that the Shaw Family's requested remedy of striking the Complaint and the Answer pursuant to Rules 16 and 37 be granted.

## C. Report to the Grievance Committee

The Court declines to report Mr. Adams' conduct to a grievance committee. The instant imposition of sanctions, coupled with Mr. Adams' withdrawal as counsel from this case, obviates the need for a report to a grievance committee. However, the Court finds that Mr. Adams' conduct at the December 9, 2015 and January 11, 2016 conferences before the undersigned warrants special note in this Order. Mr. Adams yelled, threw his pen, and sighed loudly while others were talking during these Court conferences. (*See, e.g.*, Docket No. 329-4 at 13). In fact, Mr. Adams admits to these "indiscrete" behaviors in his declaration and apologizes for acting in

such a manner. (Docket No. 380 at ¶ 138).[11]  While the Court will not impose a judgment of sanctions on Mr. Adams or report him to a grievance committee on account of this behavior, it reiterates its strong condemnation of this unprofessional conduct.

## D. Sanctions Pursuant to the Court's Inherent Authority

Given that the Court is able to sanction Mr. Adams on the above statutory grounds, it will not use its inherent authority as a source of sanctioning power. *See Mathias v. Jacobs*, 167 F.Supp.2d 606, 623 (S.D.N.Y. 2001) ("Even if the Federal Rules or a statute provides an adequate basis for imposing sanctions, a court still may resort to its inherent power as the source of the sanctions, but the Supreme Court has expressed a preference for the imposition of sanctions under the Federal Rules, when possible.").

## V. CONCLUSION

For the foregoing reasons, the Shaw Family's Sanctions Motion and Omnibus Sanctions Motion are granted in part and denied in part.  Within two weeks of the date of this Opinion and Order, the Shaw Family shall submit a statement listing the: (i) costs incurred in conducting the restoration and search of the Computer; (ii) attorneys' fees associated with the oral motion on April 8, 2016, the letter dated April 15, 2016, (Docket No. 254), and the letter dated April 18, 2016, (Docket No. 260), that were granted and resulted in the Court's April 19, 2016 Order, (Docket No. 262); (iii) attorneys' fees associated with the April 8, 2016 conference; (iv)

---

[11] In addition to these instances of disrespectful behavior, Mr. Adams again falsely alleges that the Court engaged in improper *ex-parte* communications. (Docket No. 380 at ¶¶ 161, 93, n.42).  As the Court has explicitly and repeatedly stated to Mr. Adams in the past, it did not engage in any *ex-parte* communications and, again, rejects any suggestions by Mr. Adams to the contrary.  As the Court explained previously, motions filed by opposing counsel with copies to all parties on the eve of a court appearance are not *ex-parte* communications, as Mr. Adams contends. *See Amadasu v. Ngati*, No. 05 Civ. 2585 (RRM)(LB), 2013 WL 4711260, at *1 n.2 (E.D.N.Y. Sept. 1, 2013) (holding that "Plaintiff's allegations that various letters defendants wrote to the Court . . . constitute improper *ex parte* communications are plainly without merit" because it was "evident from the record that plaintiff was . . . copied on the communication."); *Ocasio v. Fashion Inst. of Tech.*, 86 F.Supp.2d 371, 375 (S.D.N.Y. 2000) *aff'd*, 9 F. App'x 66 (2d Cir. 2001) (finding that "letters sent by defense counsel to the Court" were not *ex-parte* communications where plaintiff was "copied" on the correspondence).

attorneys' fees in connection with the January 11, 2016 conference, in addition to counsel's time spent reviewing and responding to Mr. Adams' two unauthorized letters filed January 5, 2016, (Docket Nos. 187, 187-5); (v) attorneys' fees associated with the May 19, 2016 conference at which the parties and the Court discussed Mr. Adams' conduct at the January 7, 2016 meet-and-confer; and (vi) attorneys' fees in connection with bringing the Sanctions Motion and the Omnibus Sanctions Motion.

Plaintiff and Mr. Adams shall have one week from the date on which the Shaw Family submits its statement in which to file any opposition to the fees and costs claimed therein. Plaintiff and Mr. Adams are cautioned that the failure to timely file an opposition in conformity with the Court's rules will result in the Shaw Family's submission being deemed unopposed.

The Clerk is respectfully requested to terminate the pending motions. (Docket Nos. 275, 327).

Dated:   March 1, 2017
         White Plains, New York

**SO ORDERED:**

JUDITH C. McCARTHY
United States Magistrate Judge