UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
THE ESTATE OF LARRY SHAW, AND SUSAN SHAW,
AS THE EXECUTOR OF THE ESTATE OF LARRY
SHAW, asserting claims on behalf of a New York Corporation,
SHAW FAMILY ARCHIVES, LTD., ON A SHAREHOLDER
DERIVATIVE BASIS, and/or, when so pleaded, asserting
INDIVIDUAL CLAIMS FOR THE BENEFIT OF THE
ESTATE OF LARRY SHAW,

                Plaintiffs,

    -against-

EDIE SHAW MARCUS aka EDITH SHAW MARCUS,
META SHAW STEVENS, DAVID MARCUS, MELISSA
STEVENS, GARY ADELMAN, ESQ., and SAM SHAW INC.,

                Defendants,

And SHAW FAMILY ARCHIVES, LTD.,

                As a Nominal Party to the Action.
-----------------------------------------------------------------X
SAM SHAW, INC., META STEVENS, EDITH MARCUS,
MELISSA STEVENS, DAVID MARCUS and MELISSA
STEVENS and DAVID MARCUS, on behalf of and in their
capacity as shareholders of SHAW FAMILY ARCHIVES,
LTD. on a derivative basis,

                Plaintiffs,

    -against-

THE ESTATE OF LARRY SHAW, SUSAN SHAW and
JAKOB SHAW,

                Defendants,

SHAW FAMILY ARCHIVES, LTD.,

                As a Nominal Defendant.
-----------------------------------------------------------------X

**OPINION AND ORDER**

14 Civ. 3849 (NSR)(JCM)
(Action 1)

14 Civ. 5653 (NSR)(JCM)
(Action 2)

# I. BACKGROUND

By Opinion and Order dated March 1, 2017, the Court granted in part and denied in part Defendants' Sam Shaw, Inc., Meta Stevens, Edith Marcus, Melissa Stevens and David Marcus, Esq. (jointly the "Shaw Family") Sanctions Motion and Omnibus Sanctions Motion against Joseph H. Adams ("Mr. Adams"), former counsel to Plaintiffs Estate of Larry Shaw and Susan Shaw (jointly "Plaintiffs"). (Docket Nos.[1] 275, 327, 328, 329, 452); *see Estate of Shaw v. Marcus*, No. 14 Civ. 3849 (NSR)(JCM), 2017 WL 825317 (S.D.N.Y. Mar. 1, 2017) (*"Shaw I"*).[2] Pursuant to the Court's instruction, the Shaw Family subsequently filed a statement listing the expenses incurred as a result of the sanctioned conduct. (Docket No. 455). Regarding the Court's award under the Sanctions Motion, the Shaw Family requests sanctions against Plaintiff Susan Shaw in the amount of $689.95, which constitutes seventy percent of the costs incurred in conducting the restoration and search of her computer. (Docket No. 455 at 2-3). With respect to the Omnibus Sanctions Motion, the Shaw Family requests sanctions against Mr. Adams in the amount of $38,714.00 in attorneys' fees and $2,570.57 in costs. (Docket No. 455 at 4-5). In total, the Shaw Family asks the Court to impose sanctions of $41,974.52.

Mr. Adams opposes the Shaw Family's statement, requesting that the Court either withdraw or temper its imposition of sanctions against him based on information not previously included in the record. (Docket No. 478). Mr. Adams now claims that his sanctioned behavior was caused by ill health and, for the first time, provides medical documentation in support of this contention. Similarly, for the first time, he asserts explicit claims of financial hardship.

---

[1] Unless otherwise noted, refers to the docket of Action 1, 14 Civ. 3849 (NSR)(JCM).

[2] The Court assumes the parties' familiarity with the facts of this case, its procedural history, and the law set forth in *Shaw I*.

## II. DISCUSSION

The Second Circuit has cautioned that "[c]ourts should be sensitive to the impact of sanctions on attorneys. They can be economically punishing, as well as professionally harmful; due process must be afforded." *Oliveri v. Thompson*, 803 F.2d 1265, 1280 (2d Cir. 1986) (citing Fed. R. Civ. P. 11 Advisory Committee Note). Moreover, "given the underlying purpose of sanctions – to punish deviations from proper standards of conduct with a view toward encouraging future compliance and deterring further violations – it lies well within the district court's discretion to temper the amount to be awarded against an offending attorney . . . ." *Id.* at 1281.

In *Shaw I*, the Court carefully tailored its imposition of sanctions to address only specific instances of Mr. Adams' delinquent conduct. In doing so, it thoroughly reviewed and considered the record before it. Now, in opposition to the Shaw Family's statement -- which the Court finds to be overbroad and unreasonable[3] -- Mr. Adams has supplemented the record with new and material evidence regarding his ill health and financial hardship. After a careful review of the documents submitted, the Court's decision to impose sanctions remains in order since the evidence provided does not fully excuse Mr. Adams' repeated failures to comply with Court Orders. However, the Court finds that in light of the new and material evidence submitted, the Court must temper its sanctions award.

---

[3] In addition to requesting expenses explicitly awarded by the Court in *Shaw I*, the Shaw Family also asks the Court to consider including in its award the following expenses:

| | |
|---|---|
| Cost of January 11, 2016 conference transcript | $279.39 |
| Cost of April 8, 2016 conference transcript | $472.68 |
| Cost of May 19, 2016 conference transcript | $514.80 |
| Costs associated with bringing the Omnibus Sanctions Motion | $928.28 |
| Fees and costs associated with preparing and filing Docket No. 455 | $5,000.00 |
| **TOTAL** | **$7,195.15** |

(Docket No. 455 at 8, 10, 13, 27-28). The Court finds these requests, among others, to be overbroad and unreasonable, especially in light of Mr. Adams' financial hardship. *See supra* Section II.B.

## A. Ill Health

Courts have held that "[t]he illness of a person subject to sanctions may be considered in deciding whether and what type of sanctions may be imposed, upon a proffer of the nature of the illness and its impact on one's ability to comply with the Court's orders, and supporting evidence such as a sworn statement or other medical documentation to support the claim of illness." *Burgie v. Euro Brokers, Inc.*, No. 05 Civ. 968 (CPS)(KAM), 2006 WL 845400, at *12 (E.D.N.Y. Mar. 30, 2006), *aff'd,* 2007 WL 1704178 (E.D.N.Y. June 12, 2007). As the Court noted in *Shaw I*, Mr. Adams made oral claims of ill health throughout this litigation, but never raised that issue in his submissions surrounding *Shaw I*, nor did he provide the requisite supporting evidence of his purported ailments. *See* 2017 WL 825317, at *8, n.8. In his most recent filings, however, Mr. Adams submits a confidential declaration describing his poor health during his representation of Plaintiffs. (Adams Med. Decl.[4]). Attached thereto, he includes, *inter alia*, a letter from his treating doctor, in which his doctor details Mr. Adams' persisting illnesses and their detrimental work-related effects. (Adams Med. Decl. at 4, 7-12).

The Court finds that, although Mr. Adams claims his behavior was caused by his medical condition, the medical evidence does not fully explain why he repeatedly flouted Court Orders and failed to comply with simple Court directives that resulted in wasted judicial resources. *See Shaw I*, 2017 WL 825317, at *9. Consequently, sanctions against Mr. Adams remain in order. However, after reviewing these materials, the Court is persuaded that Mr. Adams' performance was impaired by his medical condition and, thus, should be considered when calculating sanctions. *See Gill v. Stolow*, 240 F.2d 669, 671 (2d Cir. 1957) (vacating sanction, entered after defendant failed to appear for a court-ordered deposition, where defendant submitted proof

---

[4] Refers to the "Confidential Declaration of Joseph Adams Re Medical Issues" submitted to the Court *ex-parte* on April 13, 2017 due to confidential content. (*See* Docket No. 479).

-4-

demonstrating that he had been ill, which had prevented him from traveling to New York from Munich for a deposition); *cf. Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 851-52 (2d Cir. 1995) (default judgment warranted where magistrate judge determined that "defendants had engaged in a pattern of 'tactical obstruction,' throughout the discovery process and had failed to proffer any documentary evidence in support of their claim that defendant was "stricken with a 'grave illness.'").

**B. Financial Hardship**

"In awarding attorney's fees as a sanction, the Second Circuit has cautioned that a court should consider the financial circumstances of the sanctioned party." *Bowler v. U.S. I.N.S.*, 901 F. Supp. 597, 606 (S.D.N.Y. 1995) (citing *Sassower v. Field*, 973 F.2d 75, 81 (2d Cir. 1992), *cert. denied*, 507 U.S. 1043 (1993)); *see also Mantell v. Chassman*, 512 F. App'x 21, 24 (2d Cir. 2013) (finding that the district court "erred by failing to consider [the sanctioned attorney's] financial hardship argument in calculating an appropriate sanction."). In his declaration presently before the Court, Mr. Adams notes that he has "had negative income for two years in 2015 and 2016." (Docket No. 478 at ¶ 175). In considering Mr. Adams' proffers regarding his financial circumstances, the Court is persuaded that it should "temper the amount to be awarded" against him. *Oliveri*, 803 F.2d at 1281; *see also Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 179 (2d Cir. 2012) (quoting *Oliveri*, 803 F.2d at 1281) (considering the underlying purpose of sanctions -- "to punish deviations from proper standards of conduct with a view toward encouraging future compliance and deterring further violations" -- it was appropriate for the district court to temper the sanction amount as a result of, *inter alia*, the offending attorney's "financial hardship"); *Hewett v. Triple Point Tech.*, No. 13 Civ. 1382 (SRU), 2015 WL 6675529, at *10 (D. Conn. Oct. 30, 2015), *appeal dismissed* (Feb. 26, 2016),

*on reconsideration in part sub nom. Hewett v. Triple Point Tech., Inc.*, No. 13 Civ. 1382 (SRU), 2015 WL 7451152 (D. Conn. Nov. 23, 2015) (affirming decision to impose sanctions constituting two-thirds of the requested amount in view of the offending party's "claim that she has limited [financial] resources.").

In sum, while Mr. Adams' new claims of ill health and financial hardship do not change the Court's decision to impose sanctions, *see Shaw I*, 2017 WL 825317, at *11, these factors do support Mr. Adams' request to temper the monetary award against him.

## III. CONCLUSION

The Court has carefully reviewed the Shaw Family's statement and finds its request to be overbroad. Moreover, while sanctions against Mr. Adams remain in order, the Court is persuaded that it should temper the amount imposed in light of the new and material evidence presented regarding Mr. Adams' ill health and financial hardship. Accordingly, concerning the Shaw Family's Omnibus Sanctions Motion, the Court awards sanctions against Mr. Adams in the amount of $3,000.00. *See Bowler*, 901 F. Supp. at 606 (granting sanctions in the amount of $2,500 due to attorney's "outrageous course of conduct," despite the moving party's substantially higher requested amount). The Court finds that this amount is sufficient to deter repetition of the delinquent conduct by Mr. Adams and other similarly situated individuals. *See Kirschner v. Zoning Bd. of Appeals of Inc. Vill. of Valley Stream*, 159 F.R.D. 391, 399 (E.D.N.Y. 1995) (finding that because "the primary principle the Court must keep in mind is that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person," it was appropriate to reduce sanctions from $12,000 to $2,500). Separately, pursuant to the Court's finding in *Shaw I* regarding the Sanctions Motion, Plaintiff

Susan Shaw is ordered to pay the Shaw Family $689.95, which constitutes seventy percent of the costs incurred in conducting the restoration and search of her computer.

The Clerk of Court is requested to mail a copy of this Opinion and Order to Joseph H. Adams at 76 Burd Street, Nyack, New York 10960.

Dated: September 28, 2017
       White Plains, New York

                          **SO ORDERED:**

*/s/ Judith C. McCarthy*
JUDITH C. McCARTHY
United States Magistrate Judge